IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| GREGORY J. KUDASZ,<br><br>                 Plaintiff,<br><br>    v.<br><br>MANATRON INC.,<br>GREGORY A. EFFREIN,<br>DOES 1-30, INCLUSIVE,<br>                 Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 3:10CV106<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND MANATRON INC.'S COUNTERCLAIMS AGAINST PLAINTIFF

COMES NOW Defendants Manatron, Inc. ("Manatron") and Gregory A. Effrein ("Effrein") (collectively "Defendants") and, subject to their motion to dismiss to be filed at a later date, respond to Plaintiff's Complaint as follows:

### FIRST DEFENSE

1.    Upon information and belief, Defendants admit the allegations contained in Paragraph 1 of the Complaint.

2.    Defendants admit the allegations contained in Paragraph 2 of the Complaint.

3.    Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4.    Upon information and belief, Defendants admit the allegations contained in Paragraph 4 of the Complaint.

5.    In response to the allegations contained in Paragraph 5 of the Complaint, Defendants admit that Plaintiff alleges that the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332. To the extent any further allegations

contained in Paragraph 5 of the Complaint contain a legal conclusion, Defendants are not required to respond.  To the extent a response is required and with regard to any remaining allegations, Defendants deny the allegations contained in Paragraph 5 of the Complaint.

6.      The allegations contained in Paragraph 6 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 6 of the Complaint.

7.      The allegations contained in Paragraph 7 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 7 of the Complaint.  Further, to the extent the factual allegations contained in Paragraph 7 of the Complaint originate from the November 23, 2009 letter sent by the law firm Ogletree, Deakins, Nash, Smoak, & Stewart, P.C. ("Ogletree Deakins") to Plaintiff, Defendants admit that the letter is a document which speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 7 of the Complaint.

8.      In response to the allegations contained in Paragraph 8 of the Complaint, to the extent the factual allegations contained in Paragraph 8 of the Complaint originate from the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff, Defendants admit the letter is a document which speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 8 of the Complaint.

9.      In response to the allegations contained in Paragraph 9 of the Complaint, to the extent the factual allegations contained in Paragraph 9 of the Complaint originate from the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff, Defendants admit the letter is a document which speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 9 of the Complaint.

10. In response to the allegations contained in Paragraph 10 of the Complaint, Defendants admit that Plaintiff alleges causes of action for declaratory judgment as well as for various forms of defamation. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

11. Defendants admit the allegations contained in Paragraph 11 of the Complaint.

12. In response to the allegations contained in Paragraph 12 of the Complaint, Defendants admit that Plaintiff was stationed at the Mecklenburg County Register of Deeds office in Charlotte, North Carolina. Defendants further admit that the majority of Plaintiff's work time was spent serving the Mecklenburg County Register of Deeds office from whom he received most of his day to day instructions. Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

13. Defendants deny the allegations contained in Paragraph 13 of the Complaint.

14. Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15. In response to the allegations contained in Paragraph 15 of the Complaint, Defendants admit that H. Bernard Tisdale III of the law firm Ogletree Deakins mailed to Plaintiff a letter dated November 23, 2009. Defendants further admit that the letter is a document which speaks for itself. Defendants deny the remaining allegations contained in Paragraph 15 of the Complaint.

16. In response to the allegations contained in Paragraph 16 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself. Defendants deny the remaining allegations contained in Paragraph 16 of the Complaint.

17.     In response to the allegations contained in Paragraph 17 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 17 of the Complaint.

18.     In response to the allegations contained in Paragraph 18 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19.     Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21.     In response to the allegations contained in Paragraph 21 of the Complaint, Defendants admit that Plaintiff has attached as "Exhibit C" to his Complaint a document which contains the quoted language.  Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22.     The allegations contained in Paragraph 22 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23.     In response to the allegations contained in Paragraph 23 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.     In response to the allegations contained in Paragraph 24 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a

document which speaks for itself.  Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.     The allegations contained in Paragraph 25 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26.     In response to the allegations contained in Paragraph 26 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself.  Further, the allegations contained in Paragraph 26 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent there are any remaining allegations contained in Paragraph 26 of the Complaint and to the extent any additional response is required, Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.     In response to the allegations contained in Paragraph 27 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself.  Further, the allegations contained in Paragraph 27 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent there are any remaining allegations contained in Paragraph 27 of the Complaint and to the extent any additional response is required, Defendants deny the allegations contained in Paragraph 27 of the Complaint.

28.     Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint, and therefore deny them.

29.     In response to the allegations contained in Paragraph 29 of the Complaint, Defendants admit that Plaintiff has attached as "Exhibit D" to his Complaint a document which

contains the date of "19 Oct 2009," among others. Defendants lack sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Complaint, and therefore deny them.

30. In response to the allegations contained in Paragraph 30 of the Complaint, Defendants admit that Plaintiff has attached as "Exhibit E" to his Complaint a document entitled "WFLI TV NEWSCAST TRANSCRIPT NOVEMBER 16, 2009." Defendants lack sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint, and therefore deny them.

31. In response to the allegations contained in Paragraph 31 of the Complaint, Defendants admit that the November 23, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself. Defendants deny the remaining allegations contained in Paragraph 31 of the Complaint.

32. Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint, and therefore deny them. To the extent the allegations contained in Paragraph 32 of the Complaint contain a legal conclusion, Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 32 of the Complaint.

33. The allegations contained in Paragraph 33 of the Complaint contain a legal conclusion to which Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34. In response to the allegations contained in Paragraph 34 of the Complaint, Defendants admit that H. Bernard Tisdale III of the law firm Ogletree Deakins mailed to Plaintiff a letter dated December 4, 2009. Defendants further admit that the letter is a document which

speaks for itself. Defendants deny the remaining allegations contained in Paragraph 34 of the Complaint.

35.     In response to the allegations contained in Paragraph 35 of the Complaint, Defendants admit that the December 4, 2009 letter sent by Ogletree Deakins to Plaintiff is a document which speaks for itself. Defendants deny the remaining allegations contained in Paragraph 35 of the Complaint.

36.     The allegations contained in Paragraph 36 of the Complaint contain a legal conclusion to which Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 36 of the Complaint.

37.     Defendants admit the allegations contained in Paragraph 37 of the Complaint.

38.     The allegations contained in Paragraph 38 of the Complaint contain a legal conclusion to which Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 38 of the Complaint.

39.     The allegations contained in Paragraph 39 of the Complaint contain a legal conclusion to which Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41.     In response to the allegations contained in Paragraph 41 of the Complaint, to the extent the allegations in Paragraph 41 address what Plaintiff "believes," Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint, and therefore deny them. To the extent any further response is required, Defendants deny the allegations contained in Paragraph 41 of the Complaint.

7

42. The allegations contained in Paragraph 42 of the Complaint contain a legal conclusion to which Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 42 of the Complaint.

43. In response to the allegations contained in Paragraph 43 of the Complaint, to the extent the allegations contain a legal conclusion, Defendants are not required to respond. To the extent the allegations in Paragraph 43 address Plaintiff's current medical status, Defendants lack sufficient information to form a belief as to the truth of the allegations, and therefore deny them. Defendants deny the remaining allegations contained in Paragraph 43 of the Complaint.

44. Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 44 of the Complaint, and therefore deny them.

45. Defendants deny the allegations contained in Paragraph 45 of the Complaint.

46. In response to the allegations contained in Paragraph 46 of the Complaint, Defendants admit that Mary Gephart, as Vice President of Human Resources and Administration at Manatron, has received the "document" to which Plaintiff refers. Defendants deny any remaining allegations contained in Paragraph 46 of the Complaint.

47. The allegations contained in Paragraph 47 of the Complaint contain a legal conclusion to which Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48. In response to the allegations contained in Paragraph 48 of the Complaint, Plaintiff failed to attach a copy of the alleged "EMPLOYEE COUNSELING STATEMENT" to the Complaint and, as a result, Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint. Therefore, Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations contained in Paragraph 49 of the Complaint.

50.     In response to the allegations contained in Paragraph 50 of the Complaint, Plaintiff failed to attach a copy of the alleged "EMPLOYEE COUNSELING STATEMENT" to the Complaint and, as a result, Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 50 of the Complaint.  Therefore, Defendants deny the allegations contained in Paragraph 50 of the Complaint.

51.     Defendants deny the allegations contained in Paragraph 51 of the Complaint.

52.     Defendants deny the allegations contained in Paragraph 52 of the Complaint.

53.     Defendants deny the allegations contained in Paragraph 53 of the Complaint.

54.     Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.     Defendants deny the allegations contained in Paragraph 55 of the Complaint.

56.     In response to the allegations contained in Paragraph 56 of the Complaint, Plaintiff failed to attach a copy of the alleged "EMPLOYEE COUNSELING STATEMENT" to the Complaint and, as a result, Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint.  Therefore, Defendants deny the allegations contained in Paragraph 56 of the Complaint.

57.     Defendants deny the allegations contained in Paragraph 57 of the Complaint.

58.     Defendants deny the allegations contained in Paragraph 58 of the Complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of the Complaint.

60.     The allegations contained in Paragraph 60 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62.     Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint, and therefore deny them. To the extent the allegations in Paragraph 62 of the Complaint contain a legal conclusion, Defendants are not required to respond. To the extent a response is required, Defendants deny the allegations contained in Paragraph 62 of the Complaint.

63.     Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 63 of the Complaint, and therefore deny them.

64.     Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 64 of the Complaint, and therefore deny them.

65.     Defendants deny the allegations contained in Paragraph 65 of the Complaint.

66.     Defendants admit the allegations contained in Paragraph 66 of the Complaint.

67.     Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 67 of the Complaint, and therefore deny them.

68.     In response to the allegations contained in Paragraph 68 of the Complaint, Defendants admit that Darryl Slade, a Senior Technical Analyst, accompanied Effrein to Plaintiff's termination meeting. Defendants deny the remaining allegations contained in Paragraph 68 of the Complaint.

69.     Defendants admit the allegations contained in Paragraph 69 of the Complaint.

70.     Defendants admit the allegations contained in Paragraph 70 of the Complaint.

71.     Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint.

74.	Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 74 of the Complaint, and therefore deny them.

75.	Defendants admit the allegations contained in Paragraph 75 of the Complaint.

76.	Defendants admit the allegations contained in Paragraph 76 of the Complaint.

77.	Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.	Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.	Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.	Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.	Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.	Defendants deny the allegations contained in Paragraph 82 of the Complaint.

83.	Defendants deny the allegations contained in Paragraph 83 of the Complaint.

84.	Defendants deny the allegations contained in Paragraph 84 of the Complaint.

85.	Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.	Defendants deny the allegations contained in Paragraph 86 of the Complaint.

87.	In response to the allegations contained in Paragraph 87 of the Complaint, Defendants admit that Plaintiff was escorted from the location of the termination meeting to Plaintiff's work area.  Defendants deny the remaining allegations contained in Paragraph 87 of the Complaint.

88.	Defendants deny the allegations contained in Paragraph 88 of the Complaint.

89.	Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 89 of the Complaint, and therefore deny them.

90.	Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 90 of the Complaint, and therefore deny them.

91.     Defendants lack sufficient information to form a belief as to the truth of the allegations contained in Paragraph 91 of the Complaint, and therefore deny them.

92.     Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93.     The allegations contained in Paragraph 93 of the Complaint contain a legal conclusion to which Defendants are not required to respond.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94.     Defendants deny the allegations contained in Paragraph 94 of the Complaint.

95.     With regard to the allegations contained in Paragraph 95 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 94 of the Complaint, as if repeated verbatim herein.

96.     Defendants deny the allegations contained in Paragraph 96 of the Complaint.

97.     Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98.     Defendants deny the allegations contained in Paragraph 98 of the Complaint.

99.     With regard to the allegations contained in Paragraph 99 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 98 of the Complaint, as if repeated verbatim herein.

100.     Defendants deny the allegations contained in Paragraph 100 of the Complaint.

101.     Defendants deny the allegations contained in Paragraph 101 of the Complaint.

102.     Defendants deny the allegations contained in Paragraph 102 of the Complaint.

103.     With regard to the allegations contained in Paragraph 103 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 102 of the Complaint, as if repeated verbatim herein.

104.     Defendants deny the allegations contained in Paragraph 104 of the Complaint.

105.     Defendants deny the allegations contained in Paragraph 105 of the Complaint.

106.     Defendants deny the allegations contained in Paragraph 106 of the Complaint.

107.     Defendants deny the allegations contained in Paragraph 107 of the Complaint.

108.     Defendants deny the allegations contained in Paragraph 108 of the Complaint.

109.     Defendants deny the allegations contained in Paragraph 109 of the Complaint.

110.     With regard to the allegations contained in Paragraph 110 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 109 of the Complaint, as if repeated verbatim herein.

111.     Defendants deny the allegations contained in Paragraph 111 of the Complaint.

112.     Defendants deny the allegations contained in Paragraph 112 of the Complaint.

113.     Defendants deny the allegations contained in Paragraph 113 of the Complaint.

114.     With regard to the allegations contained in Paragraph 114 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 113 of the Complaint, as if repeated verbatim herein.

115.     Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116.     Defendants deny the allegations contained in Paragraph 116 of the Complaint.

117.     Defendants deny the allegations contained in Paragraph 117 of the Complaint.

118.     With regard to the allegations contained in paragraph 118 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 117 of the Complaint, as if repeated verbatim herein.

119.     Defendants deny the allegations contained in Paragraph 119 of the Complaint.

120.     Defendants deny the allegations contained in Paragraph 120 of the Complaint.

121.     Defendants deny the allegations contained in Paragraph 121 of the Complaint.

122.     Defendants deny the allegations contained in Paragraph 122 of the Complaint.

123.     Defendants deny the allegations contained in Paragraph 123 of the Complaint.

124.     With regard to the allegations contained in Paragraph 124 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 123 of the Complaint, as if repeated verbatim herein.

125.     Defendants deny the allegations contained in Paragraph 125 of the Complaint.

126.     Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127.     Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128.     With regard to the allegations contained in Paragraph 128 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 127 of the Complaint, as if repeated verbatim herein.

129.     Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130.     Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131.     Defendants deny the allegations contained in Paragraph 131 of the Complaint.

132.     Defendants deny the allegations contained in Paragraph 132 of the Complaint.

133.     With regard to the allegations contained in Paragraph 133 of the Complaint, Defendants incorporate herein their responses to Paragraphs 1 through 132 of the Complaint, as if repeated verbatim herein.

134.     Defendants deny the allegations contained in Paragraph 134 of the Complaint.

135.     Defendants deny the allegations contained in Paragraph 135 of the Complaint.

136.     Defendants deny the allegations contained in Paragraph 136 of the Complaint.

137.     Defendants deny the allegations contained in Paragraph 137 of the Complaint.

138.     Defendants deny the allegations contained in Paragraph 138 of the Complaint.

139.    Defendants deny the allegations contained in Paragraph 139 of the Complaint.

140.    Defendants deny the allegations contained in the "Prayer for Relief" of the Complaint (including all subparts A through M) and specifically allege that Plaintiff is entitled to no recovery whatsoever.

141.    Defendants deny each and every allegation of the Complaint not specifically admitted herein above.

## SECOND DEFENSE

142.    Each of the causes of action in Plaintiff's Complaint fails to state a claim against Defendants upon which any relief may be granted.

## THIRD DEFENSE

143.    Plaintiff's claims for declaratory judgment fail to state a claim upon which relief can be granted because none of the claims are based upon an "actual controversy" as required by 28 U.S.C. § 2201(a).

## FOURTH DEFENSE

144.    Plaintiff's claims for declaratory judgment fail to state a claim upon which relief can be granted because all such claims are moot and/or unripe as a matter of law.

## FIFTH DEFENSE

145.    The Complaint fails to state a claim against Defendants because Defendants did not make any unprivileged publication to a third party of untrue facts concerning Plaintiff.

## SIXTH DEFENSE

146.    Plaintiff's claims are barred in whole or part because any statements Defendants may have made about Plaintiff were mere expressions of opinion.

## SEVENTH DEFENSE

147.    Plaintiff's claims are barred in whole or in part because to the extent that any statements were published by Defendants regarding Plaintiff, they were privileged.

## EIGHTH DEFENSE

148.    Plaintiff's claims are barred in whole or in part because to the extent that any statements were published by Defendants regarding Plaintiff, they were true.

## NINTH DEFENSE

149.    Plaintiff's claims are barred in whole or in part because, to the extent that any statements were published by Defendant, they were published without malice.

## TENTH DEFENSE

150.    Plaintiff's claims are barred in whole or in part because any statements Defendants may have made about Plaintiff did not impeach Plaintiff in his trade, occupation, or profession or subject Plaintiff to ridicule, contempt, or disgrace.

## ELEVENTH DEFENSE

151.    The Complaint fails to state a claim upon which relief may be granted because the Plaintiff has failed to invoke any statute in support of his claims and because no common law right of action concerning the rights allegedly violated exists.

## TWELFTH DEFENSE

152.    Plaintiff's claim for "defamation by conduct" has not been adopted and/or recognized by the State of North Carolina and, therefore, does not provide a basis for relief.

## THIRTEENTH DEFENSE

153.    The Complaint fails to state a claim against Defendants because Defendants' actions were neither outrageous nor extreme.

## FOURTEENTH DEFENSE

154.   The Complaint fails to state a claim against Defendants because Defendants did not engage in any negligent conduct.

## FIFTEENTH DEFENSE

155.   The Complaint fails to state a claim against Defendants because it was not reasonably foreseeable that any actions Defendants may have taken would result in severe emotional distress to Plaintiff.

## SIXTEENTH DEFENSE

156.   Plaintiff's claims are barred in whole or in part because Defendants' actions were justified by legitimate business reasons.

## SEVENTEENTH DEFENSE

157.   Plaintiff's claims are barred in whole or in part under the doctrine of election of remedies.

## EIGHTEENTH DEFENSE

158.   Plaintiff's claims are barred in whole or in part because of his own misconduct.

## NINTEENTH DEFENSE

159.   The relief sought by Plaintiff is barred in whole or in part because Defendants' actions were not in willful disregard of any legal rights of Plaintiff.

## TWENTIETH DEFENSE

160.   The relief sought by Plaintiff is barred in whole or in part because Defendant's actions were not taken with malice or bad faith.

## TWENTY-FIRST DEFENSE

161. The Complaint fails to state a claim against Defendants because Defendants took no actions intended to harm Plaintiff in any way.

## TWENTY-SECOND DEFENSE

162. Plaintiff's claims are barred because Defendants have committed no act or omission with the intent to cause harm, injury, or other damage to Plaintiff.

## TWENTY-THIRD DEFENSE

163. Any relief to which Plaintiff may be entitled should be limited in whole or in part by the doctrine of election of remedies to the extent such doctrine is applicable to the facts in this case.

## TWENTY-FOURTH DEFENSE

164. Plaintiff's claims are barred in whole or in part under the doctrines of unclean hands, laches, equitable estoppel, waiver, and/or release to the extent that such doctrines are applicable to the facts in this case.

## TWENTY-FIFTH DEFENSE

165. Plaintiff is not entitled to any damages in this action. However, in the event Plaintiff recovers damages in this action, the amounts of such damages are subject to the due process safeguards afforded Defendants by the Constitutions of the United States and North Carolina.

## TWENTY-SIXTH DEFENSE

166. Any award of damages is subject to all applicable caps or limitations, including but not limited to the limitations set forth in N.C. GEN. STAT. § 1D-25.

## TWENTY-SEVENTH DEFENSE

167.    Plaintiff is not entitled to punitive damages or liquidated damages against Defendants because they, in good faith, attempted to comply with controlling law and never engaged in any willful, malicious, intentional and/or reckless conduct that would justify an award of such damages.

## TWENTY-EIGHTH DEFENSE

168.    Any recovery of damages is barred to the extent Plaintiff has failed to mitigate such damages.

## TWENTY-NINTH DEFENSE

169.    Any award of damages should be limited pursuant to the after-acquired evidence doctrine where applicable.

## THIRTIETH DEFENSE

170.    Plaintiff's Complaint fails to state a claim for relief of punitive damages against the Defendant, and the same should be dismissed pursuant to Rule 12(b)(6), Rule 9 and Chapter 1(D), in that it fails to aver with particularity that aggravating factor or factors which supports a claim for punitive damages.

## THIRTY-FIRST DEFENSE

171.    Plaintiff's request for punitive damages and any award thereof violate the due process and equal protection clauses under the United States Constitution and the applicable provisions of the Constitution of the State of North Carolina.

## THIRTY-SECOND DEFENSE

172.    Plaintiff's claims are barred by the applicable statutes of limitations.

## THIRTY-THIRD DEFENSE

173.     In light of Defendant's Counterclaims, all of Plaintiff's claims are moot and should be dismissed.

## THIRTY-FOURTH DEFENSE

174.     Defendants hereby give notice that it intends to rely upon such further defenses as may become available during discovery in this action and reserves the right to amend its Answer to assert any such defenses and/or to respond to any amendments to the Complaint Plaintiff might file.

WHEREFORE, Defendants pray:

        a.     For judgment in their favor and that Plaintiff's Complaint be dismissed with prejudice;

        b.     For the costs and other expenses of litigation be taxed to Plaintiff;

        c.     For an award of reasonable attorneys' fees in defending this matter; and/or

        d.     For such other and further relief as the Court deems just and proper.

## DEFENDANT MANATRON'S COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant Manatron, Inc. makes the following Counterclaims against Plaintiff:

## PARTIES

1.     Defendant/Counter-Plaintiff Manatron, Inc. ("Defendant" or "Manatron") is a corporation organized under the State of Michigan and provides enterprise-level, integrated property software systems and services for state and local governments.

2.      Plaintiff/Counter-Defendant Gregory J. Kudasz ("Plaintiff" or "Kudasz") is a citizen and resident of Mecklenburg County, North Carolina.  Plaintiff is a former employee of Manatron, working in Manatron's Records Management department.

## JURISDICTION

3.      This Court has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367 because they form part of the same transaction or occurrence that is the subject matter of Plaintiff's Complaint within the meaning of Rule 13(a) of the Federal Rules of Civil Procedure, or, in the alternative, is a permissive counterclaim within the meaning of Rule 13(b) of the Federal Rules of Civil Procedure.

4.      Plaintiff has submitted himself to jurisdiction of this Court through the bringing of this action.

## FACTS

5.      Defendant Manatron is a global leader in providing enterprise-level, integrated property software systems and services for state and local governments.  With a rich history in property recording, tax assessment, billing and collection, Manatron has been at the forefront of innovative product and service development since 1969.

6.      On or about September 1, 2007, Manatron hired Plaintiff Kudasz in the position of RN Technical Services Technician in the Records Management Department, assigned to Manatron's Mecklenburg County Project.

7.      Plaintiff was based in the Mecklenburg County Recorder's Office providing IT services on site and was the only Manatron employee providing direct, day to day support to Mecklenburg County on behalf of Manatron.

8. Plaintiff's immediate Manatron superior was Wade Peikert ("Peikert"). Peikert's immediate superior was Greg Effrein ("Effrein"). Neither individual was based in North Carolina.

9. On or about August 31, 2007, Plaintiff executed a Noncompete and Nondisclosure Agreement ("Nondisclosure Agreement"). This Nondisclosure Agreement was executed at the time of his hire, and Manatron's offer of employment to Plaintiff was contingent upon his execution of the Nondisclosure Agreement. A copy of Plaintiff's Nondisclosure Agreement is attached and incorporated by reference into these Counterclaims as Exhibit 1.

10. In signing the Nondisclosure Agreement, Plaintiff agreed as follows:

Confidential or Proprietary Information. Employee agrees that during and after his/her employment with Manatron, he/she will not disclose any of Manatron's confidential or proprietary information to any person, firm, corporation, association or other entity (other than to appropriate persons in Manatron's organization) for any reason or purpose whatsoever; nor will Employee use any such confidential or proprietary information for his/her own benefit, or for the benefit of any person, firm, corporation or other entity except Manatron.

For purposes of this Agreement, the term "confidential or proprietary information" shall include, but not be limited to: Manatron's trade secrets, technical information developed by Manatron, Manatron's costs, existing or potential customers, customer lists, market studies, market plans and strategies, pricing formulas, financial information, new product plans, systems, improvements, computer programs, sources of supply and services, formulas, and methods, or other information relating to Manatron's business, books and records, and private processes, as they may exist from time to time, which Employee may have acquired, developed, or obtained by virtue of working for Manatron.

(Exhibit 1, Section 2.)

11. Upon information and belief, in or about April 2009, Beverly Buchanan ("Buchanan"), an employee of Mecklenburg County, contacted Mr. Effrein and Mr. Peikert regarding Plaintiff's inappropriate conduct in the office. Mr. Effrein and Mr. Peikert informed Ms. Buchanan that she should discuss the matter with Mary Gephart ("Gephart"), Manatron's

Vice President of Human Resources and Administration. Ms. Gephart contacted Ms. Buchanan and discussed Plaintiff's behavior.

12.     Subsequently, on or about April 23, 2009, Ms. Gephart received a telephone call from J. David Granberry ("Granberry"), the publicly elected Register of Deeds for Mecklenburg County. Like Ms. Buchanan's concerns, the purpose of Granberry's telephone call was to register multiple complaints about the services being provided to Mecklenburg County by Plaintiff.

13.     Among Granberry's complaints, Granberry was concerned the County was not receiving an acceptable level of service in that Plaintiff was not on-site very often, Plaintiff had failed to resolve problems with multiple computers, Plaintiff was months behind with a plan for the County's new server, and Plaintiff's performance of back-ups was also behind.

14.     In addition, Granberry stated several county employees had complained that Plaintiff had exhibited inappropriate behavior and was rude.

15.     Finally, Granberry expressed greatest concern that Plaintiff was using County computer equipment inappropriately. Plaintiff, while working at the County office, spent a substantial amount of time accessing internet chat rooms frequented by pre-teenage boys and regularly told County employees about his online conversations with such individuals.

16.     After obtaining permission from Granberry, Gephart spoke with three County employees in Plaintiff's department. These employees confirmed numerous incidents of inappropriate behavior and rudeness by Plaintiff as well as that Plaintiff was utilizing County computers to access chat rooms frequented by pre-teenage boys and discussing this activity with County employees.

17.     On or about April 28, 2009, in light of the information Gephart acquired during her interviews of County employees and the fact that Plaintiff's only job was to service Manatron's contract with Mecklenburg County, Manatron terminated Plaintiff's employment.

18.     Since April 28, 2009, Plaintiff has knowingly, willfully, and continuously contacted Manatron customers and provided them with false and defamatory and/or confidential and proprietary information in an attempt to disrupt or otherwise harm Manatron's current and future prospective contracts with those customers.

19.     After his termination, Plaintiff created the username "Managroan" on the popular video posting website "YouTube."  As Managroan, Plaintiff began posting disparaging videos targeting Manatron and attempting to impeach Manatron's business reputation.

20.     On September 23, 2009, Plaintiff posted a video entitled "Manatron Manager Tells Sick Employee to Get His Ass to Work."  When played, the video relays a private voicemail message left by Mr. Peikert to an employee in which Mr. Peikert demonstrates annoyance and frustration towards the employee for being out of the office for three days due to alleged sickness.

21.     Plaintiff presents the video with ominous sounding background music.  As a result, Plaintiff attempts to present the video in such a way as to give the false impression that Mr. Peikert's statements were normal Manatron practice rather than an isolated single communication between a supervisor and an employee.  Such an implication is false and intended to harm Manatron's business reputation.

22.     As of April 20, 2010, this video had been viewed 384 times.

23.     On September 26, 2009, Plaintiff posted two videos: (1) "Manatron Software Project Suspended in Emergency Session"; and (2) "Jackson County Commissioners Suspend

Manatron Software."  When played, both of these videos target Manatron's provision of products and services to Jackson County, Minnesota.

24.    Jackson County, Minnesota, has acquired Manatron software through the Minnesota Counties Computer Cooperative ("MCCC").   MCCC is the direct customer of Manatron.

25.    The videos highlight meeting minutes and a single "Jackson County Pilot" article regarding Manatron's provision of software services to Jackson County through the MCCC.  The videos, citing to the texts while playing ominous or harsh background music, imply that Jackson County, Minnesota, is breaking its contract with MCCC due to issues with Manatron's products and services.  Such an implication is false.

26.    As of April 20, 2010, "Manatron Software Project Suspended in Emergency Session" had been viewed 175 times.

27.    As of April 20, 2010, "Jackson County Commissioners Suspend Manatron Software" had been viewed 120 times.

28.    Finally, on October 10, 2009, Plaintiff posted a video entitled "Manatron Operated Website Errors at 4 am."  This video implores viewers to attempt to find errors in the Mecklenburg County Register of Deeds website and depicts Plaintiff's screen as he navigates the website at four o-clock in the morning, intentionally indicating and highlighting all alleged "website errors."

29.    As of April 20, 2010, this video had been viewed 102 times.

30.    On or about September 23, 2009, Plaintiff emailed Jennifer Leggett Whitehurst, the publicly elected Register of Deeds for Beaufort County, North Carolina.  (*See* September 23,

2009 Email Exchange between Plaintiff and Jennifer Leggett Whitehurst entitled "Copies of E-mail Request," a true and correct copy of which is attached hereto as Exhibit 2.)

31.     Beaufort County, North Carolina, is a current customer of Manatron.

32.     In his September 23, 2009 email to Ms. Whitehurst, Plaintiff made a public records request for all emails exchanged between Ms. Whitehurst and Manatron in the previous two years.  Plaintiff had no reason to contact Ms. Whitehurst or to make such a request involving Manatron's business with Beaufort County.

33.     Further, in the email exchange that follows, Plaintiff states to Ms. Whitehurst without prompting: "I don't know what the status of Manatron staffing is now for field support but I fear it's mostly still Darryl with Wade as a backup.  They keep selling the product but they need to add staff.  They've had a terrible year in the press with all kinds of nastiness in several states."

34.     To the extent Plaintiff has knowledge of Manatron's current staffing information, Plaintiff acquired such information only as a result of Plaintiff's previous employment with Manatron.  Such information is not publicly known and is confidential and proprietary Manatron staffing information.  Plaintiff's disclosing of such confidential staffing information is prohibited by the Nondisclosure Agreement.

35.     On October 12, 2009, Plaintiff again contacted Ms. Whitehurst by sending her a link to the YouTube video entitled "Manatron Manager Tells Sick Employee to Get His Ass to Work," addressed above.  (*See* Plaintiff's October 12, 2009 YouTube Email to Ms. Leggett Whitehurst, a true and correct copy of which is attached hereto as Exhibit 3.)  This email was sent directly from Plaintiff's YouTube account under the username "Managroan."  As described above, this video relays a voicemail left by a Manatron supervisor and has nothing to do with

Plaintiff, Ms. Whitehurst, Beaufort County, or Manatron's products and services. It was sent to Ms. Whitehurst solely to further Plaintiff's personal vendetta against Manatron and to cause further injury to Manatron's business relationship with Ms. Whitehurst and Beaufort County.

36.     As a result of Plaintiff's contacts, Ms. Whitehurst did in fact forward Plaintiff's emails to Manatron seeking further explanation for both Plaintiff's actions and the content of his emails.   Plaintiff's vindictive actions have harmed Manatron's business relationship with Beaufort County, North Carolina.  Plaintiff's actions have also jeopardized future contacts with Beaufort County.

37.     On October 15, 2009, Plaintiff sent an email entitled "Hitching your Future to Manatron" to twenty-six (26) individuals, nearly all of which are employed by Waukesha County, Wisconsin.  (*See* Plaintiff's October 15, 2009 Email to Waukesha County entitled "Hitching your Future to Manatron," a true and correct copy of which is attached hereto as Exhibit 4.)

38.     Waukesha County, Wisconsin, is a current customer of Manatron.

39.     The list of County officials to whom Plaintiff sent the email includes, among others, the entire Board of Directors for Waukesha County, the Register of Deeds, and the County's information technology project manager.

40.     In his "Hitching your Future to Manatron" email:

a.     Plaintiff begins by attempting to persuade the Waukesha County officials to believe his false statements: "I am an ex-Manatron employee formally [sic] assigned full time to Mecklenburg County NC Register of Deeds.  You may consider me disgruntled if you like but that does not change the facts that I outline below.  They are 100% truthful and verifiable."

b.      Plaintiff includes highly detailed questions about Manatron's staffing levels and personnel and "STRONGLY ENCOURAGES" Waukesha County officials to ask Manatron the questions before making any software purchases.  Plaintiff utilized confidential and proprietary Manatron staffing and personnel information to specifically tailor the questions to expose information Plaintiff sees as harmful to Manatron's business reputation and business relationship with Waukesha County.

c.      Plaintiff provides false information to the Waukesha County officials.  For instance, Plaintiff states that after the "acquisition of Manatron by Thoma Bravo…there has been a slew of reported failures of new implementations, severe problems that affect constituents, and some very bad press."  In fact, Manatron has had fewer than five contracts terminated during the past five years, all of which were terminated for customer convenience reasons, not a failure by Manatron to meet contract requirements.

d.      Plaintiff devotes an entire section of his email to "Mecklenburg County Website Errors."  Plaintiff includes links to the Mecklenburg County website and implores Waukesha County officials to visit the website and locate specific alleged errors.  Plaintiff also includes a link to the above-referenced YouTube video ("Manatron Operated Website Errors at 4 am") in which he causes alleged errors to occur on the Mecklenburg County website at four o-clock in the morning.

e.      Plaintiff states:  "Finally, a lot can be learned about a company by the personality and actions of its managers.  I'm not going to say anything about Mr. Effrein at this time, but listen to the following from the manager in charge of field support for the GRM Recorder product: hhtp://www.youtube.com/watch?v=VArSlherZoo who reports to him."  This

video link again leads to the above-referenced YouTube video Plaintiff created of a Manatron supervisor's private voicemail to an employee.

        f.      Plaintiff includes at least ten descriptions of and links to articles and meeting notes Plaintiff located online. All such articles were specifically selected by Plaintiff to give the false impression of widespread displeasure with Manatron and its products and, as a result, to dissuade Waukesha officials from continuing in current or prospective contracts with Manatron.

41.     Upon information and belief, Plaintiff's "Hitching your Future to Manatron" email has caused injury to Manatron's business relationship with Waukesha County, has harmed the likelihood of future contracts with Waukesha County, has injured Manatron's reputation, and has subjected Manatron to ridicule in its business relationship.

42.     Upon information and belief, in or before November 2009, Plaintiff contacted Samantha Steele-Coles, the County Assessor for Tippecanoe County, Indiana.

43.     Tippecanoe County, Indiana, is a current customer of Manatron.

44.     Upon information and belief, Plaintiff had viewed a news story, on or about October 19, 2009, in which Ms. Steele-Coles had expressed concerns about using Manatron software. Upon information and belief, Plaintiff then contacted Ms. Steele-Coles to supply her with negative Manatron information in an effort to end Tippecanoe County's relationship with Manatron.

45.     Upon information and belief, the correspondence Plaintiff sent to Ms. Steele-Coles contained false and defamatory information regarding Manatron's staffing, products and services.

46. Upon information and belief, such information shared with Ms. Steele-Coles may have also contained confidential and/or proprietary Manatron information. The sharing of such information is prohibited by Plaintiff's Nondisclosure Agreement.

47. On November 16, 2009, Plaintiff emailed Tom Murtaugh, a County Commissioner for Tippecanoe County, Indiana. (*See* November 16, 2009 Email Exchange entitled "Manatron" between Plaintiff and Commissioner Murtaugh, a true and correct copy of which is attached hereto as Exhibit 5.)

48. In his November 16, 2009 email, Plaintiff states: "I estimate more than $9 billion worth of parcels has had to be de-cert or other issues due to software errors." Such a statement implies to a Manatron customer that Manatron software caused other customers significant losses in revenue and that Manatron does not have the appropriate staffing to support the application purchased by Tippecanoe County. Such statements are false.

49. Plaintiff's email further states: "However one of those links [to a website article] includes an assessor that almost fell under a criminal probe due to software problems." Such a statement falsely implies that if Tippecanoe County does not abandon its relationship with Manatron, the Tippecanoe County Assessor will be subject to a criminal probe.

50. On November 23, 2009, due to Plaintiff's continued contacting of Manatron's customers – the most recent being Commissioner Murtaugh of Tippecanoe County – Manatron sent to Plaintiff a letter requesting that Plaintiff cease and desist any further contacts with Manatron customers. (*See* Manatron's November 23, 2009 Cease and Desist Letter to Plaintiff, Exhibit A to Plaintiff's Complaint (Doc. 2 at 22-23).) The letter further reminded Plaintiff of his obligations under the Nondisclosure Agreement and placed Plaintiff on notice that his actions had exposed and was continuing to expose Manatron to significant monetary and other damage.

51.     On November 26, 2009, shortly after and in violation of Manatron's cease and desist letter, Plaintiff sent another email to both Ms. Steele-Coles and Commissioner Murtaugh of Tippecanoe County.  (*See* Plaintiff's November 26, 2009 Email to "Ms. Steele and Mr. Murtaugh" entitled "Prelitigation Notice to avoid spoilage," a true and correct copy of which is attached hereto as Exhibit 6.)

52.     Plaintiff's November 26, 2009 email contains numerous false statements and implications.  For instance, Plaintiff's email purports to request that Tippecanoe County retain documents to prevent "spoilage of evidence" due to a "lawsuit" being pursued against Plaintiff.  In fact, Plaintiff was not involved in a lawsuit at that time and there was no need to contact Tippecanoe County to preserve evidence or otherwise.

53.     Also, throughout the November 26, 2009 email, Plaintiff asserts that Plaintiff has "no choice" but to contact both Ms. Steele-Coles and Commissioner Murtaugh because Manatron purportedly involved Tippecanoe County in the "lawsuit" and that Plaintiff's request is a result of "Manatron's decision."  In fact, at this time, Manatron had no lawsuit against Plaintiff nor did Manatron indicate Plaintiff should contact Tippecanoe County.  To the opposite, Tippecanoe County is referenced in the cease and desist letter by name as a specific example of a customer Plaintiff should refrain from contacting.  Plaintiff's statements are designed to imply that any irritation caused to Tippecanoe County by Plaintiff's harassing emails and unnecessary requests should be aimed towards Manatron, not Plaintiff.

54.     Plaintiff concludes his November 26, 2009 email by stating:  "This seems to be a strange way for [Manatron] to react.  Dragging you in as an elected official but also as a customer will mean you will spend dollars and energy on their behalf.  That seems like a strange

way to sell software."  This statement is false and intended to create annoyance and resentment in Tippecanoe County officials towards Manatron.

55.    Upon information and belief, Plaintiff's emails to Tippecanoe County officials have caused injury to Manatron's business relationship with Tippecanoe County, have harmed the likelihood of future contracts with Tippecanoe County, have injured Manatron's reputation, and have subjected Manatron to ridicule in its business relationship.

56.    Also on November 26, 2009, Plaintiff replied, via email, to Manatron's cease and desist letter.  (*See* Plaintiff's November 26, 2009 Email entitled "Reply to your letter," a true and correct copy of which is attached hereto as Exhibit 7.)

57.    Among other statements in his November 26, 2009 email response, Plaintiff threatens: "Furthermore, unless we reach a settlement that is favorable to me and can be done within a time period that is surely unlikely, you leave me no choice than to contact all customers that have had issues exposed in the media (the majority of whom I have not contact [sic] before) to preserve evidence proving all my statements are truthful."  In fact, on November 26, 2009, Plaintiff was not subject to any lawsuit brought by Manatron.

58.    Plaintiff's November 26, 2009 response was intended as a threat that if Manatron did not offer some form of settlement to Plaintiff, he would begin contacting "all customers that have had issues exposed in the media."

59.    As of December 4, 2009, Manatron was unaware of Plaintiff's contacting of Manatron customers since Manatron issued to Plaintiff a cease and desist letter.  Believing that Plaintiff was not in violation of the cease and desist letter, Manatron sent to Plaintiff a second letter assuring Plaintiff that Manatron would not be taking steps to file any lawsuit against

Plaintiff.  (*See* Manatron's December 4, 2009 Letter to Plaintiff, Exhibit F to Plaintiff's Complaint (Doc. 2 at 37).)

60.     Approximately three months later, on March 9, 2010, Plaintiff filed the current lawsuit against Manatron, Greg Effrein ("Effrein"), and "Does 1-30."  (Doc. No. 2.)  Despite Plaintiff's earlier representations to Manatron customers that Manatron had brought a lawsuit against Plaintiff and was involving the customers, Plaintiff's filing of this action against Manatron marked the first and only civil action between the parties.

61.     On March 13, 2010, Plaintiff emailed Mr. Granberry, the elected Register of Deeds for Mecklenburg County, North Carolina.  (*See* Plaintiff's March 13, 2010 Email to Mr. Granberry entitled "Official Request: Missing Page 9--2005209143," a true and correct copy of which is attached hereto as Exhibit 8.)

62.     Mecklenburg County, North Carolina, is a current customer of Manatron.  While employed with Manatron, Plaintiff was stationed in the Register of Deeds office for Mecklenburg County.

63.     In his March 13, 2010 email to Mr. Granberry, Plaintiff requests the "status" of a document held in the Register of Deeds office files that appears to be missing a page nine.

64.     In part, Plaintiff's email to Mr. Granberry states:  "[Plaintiff's] recollection of this is that the images and who knows how many more were lost due to a catastrophic hardware failure at Meck.  The file DID exist on the external website but was 'lost' by Manatron as a transition was made to HIPA.  This doesn't bode well for Manatron, ROD or the customer.  This issued [sic] has been unresolved for nearly two years.  Is this due to a lack of resources at Manatron or some other problem?"

65.     In fact, upon information and belief, Plaintiff was made aware of the missing page nine while still employed by Manatron.  Furthermore, upon information and belief, it was Plaintiff's job responsibility to resolve the missing page nine issue, however Plaintiff failed to do so at any time prior to his discharge.

66.     Upon information and belief, Plaintiff's emails to Mr. Granberry has caused injury to Manatron's business relationship with Mecklenburg County, has harmed the likelihood of future contracts with Mecklenburg County, has injured Manatron's reputation, and has subjected Manatron to ridicule in its business relationship.

67.     On March 17, 2010, Plaintiff emailed Effrein and counsel for Manatron regarding the "missing page nine."  (*See* Plaintiff's March 17, 2010 Email to Manatron entitled "Manatron – Mecklenburg Criminal Issues," a true and correct copy of which is attached hereto as Exhibit 9.)

68.     In his March 17, 2010 email, Plaintiff accuses Manatron of intentionally losing "page nine" and threatens that the missing page "likely" constitutes "a criminal act under NCGS."

69.     Plaintiff taunts further: "You might want to brush up on NCGS 161 and NCGS 132."

70.     Having threatened criminal prosecution, Plaintiff further states: "Depending on how Manatron answers the complaint, an NCGS 132 criminal complaint may be made if they attempt to shift the blame to David G's office.  As you calculate costs, I suggest you calculate the effect on [Manatron's] business relationship with Mecklenburg County after a criminal charge has been made against their customer based on actions Manatron did."

71.     Plaintiff further states that the threatened prosecution would "pretty much [be] a slam dunk for a prosecutor."

72.     In total, Manatron understands these statements to constitute attempts by Plaintiff to influence Manatron's answer to Plaintiff's Complaint by threatening criminal prosecution.  The clear implication of Plaintiff's statement is that if Manatron answers Plaintiff's Complaint in such a way as to "shift the blame" to the Mecklenburg County Register of Deeds office, presumably by not admitting Manatron's own alleged liability, Plaintiff will cause a criminal prosecution to proceed against Mecklenburg County.

73.     On March 17, 2010, Plaintiff also sent a second email to counsel for Manatron. (*See* Plaintiff's March 17, 2010 Email to Manatron entitled "Manatron IN," a true and correct copy of which is attached hereto as Exhibit 10.)  Plaintiff quotes an excerpt from, presumably, a news article in which a county appears to express concerns regarding Manatron products and services.

74.     Plaintiff then attempts to taunt counsel by concluding:  "Is it your client's position that the lack of return [sic] phone calls is done for some spiteful or fraudulent issue against their customers or could it be your client doesn't have adequate staffing to return the damn phone calls?"

75.     On March 22, 2010, Plaintiff emailed several Manatron employees, including Mr. Peikert, Plaintiff's former supervisor, and Mr. Granberry, Register of Deeds for Mecklenburg County.  (*See* Plaintiff's March 22, 2010 Email to Peikert entitled "FW: Greg Kudaz feedback," a true and correct copy of which is attached hereto as Exhibit 11.)

76.     Plaintiff's March 22, 2010 email is apparently in response to a previous April 24, 2009 email Mr. Peikert sent to Beverly Buchanan, a Mecklenburg County employee, regarding

35

Ms. Buchanan's complaints about Plaintiff's behavior while he was still employed by Manatron and stationed in Mecklenburg County. (*See* the description of Ms. Buchanan's complaints in Paragraphs 11-12, *supra*.) Mr. Peikert's email states, in part, "I would like to apologize for the level of support and discomfort in your office environment caused by this individual. This is certainly not indicative of our company or our product."

77.    Plaintiff's March 22, 2010 email to Manatron employees and Mr. Granberry responds, stating: "No, what is indicative of Manatron is negligence on your part to protect images, bullying on your part against your employees, and the illegal tampering with public records, a criminal act. Thanks for not unf*cking this up. It's quite valuable." (star symbol in original).   As a result, in an email addressed to a Manatron customer, besides the use of profanity, Plaintiff accused Manatron of negligence, bullying and criminal activity. All such allegations are false.

78.    On March 29, 2010, Plaintiff again emailed Mr. Granberry to request "database schema for document details." (*See* Plaintiff's March 29, 2010 Email to Mr. Granberry entitled "Official Request: Database Schema for Document Details," a true and correct copy of which is attached hereto as Exhibit 12.)

79.    Such information is confidential and proprietary Manatron software information and is not available to the public. As Plaintiff is no longer a Manatron employee, Plaintiff had no need-to-know this information.

80.    On April 1, 2010, Plaintiff emailed counsel for Manatron, two Manatron employees, and Mr. Granberry. (*See* Plaintiff's April 1, 2010 Email to Manatron and Mr. Granberry entitled "April 1 Web Site issue," a true and correct copy of which is attached hereto as Exhibit 13.) Plaintiff accuses Manatron of failing to correct an issue on the Mecklenburg

County website. This issue allegedly causes a security message "popup" to occur while accessing the site at certain times of day.

81. Plaintiff's email demands, in part: "I would like an answer as to why this error persists so long. I would like you to produce any proof of consent from the county where they waived their request to have this fixed. If this is not due to such waiver (which I so highly doubt), and is not due to staffing issues, kindly explain what accounts for this. I will give you seven days to produce an answer to my query before I take it before the county commission. The fix should be free and an accounting credit should be made to the county for this prolonged omission unless proof of waiver can be produced."

82. As referenced above, Plaintiff posted a video on YouTube, under the username "Managroan," publicly demonstrating alleged errors on the Mecklenburg County website.

83. Upon information and belief, the security message to which Plaintiff refers is not caused by an issue with Manatron software, but rather the user's browser. The image viewer used by Manatron requires that a file be stored on the user's computer. As a result, the user is given a warning "popup" that is requesting the user's permission to store the file on the user's computer. Because the warning is a result of the user's browser and not Manatron's software, the warning cannot be changed by Manatron.

84. Upon information and belief, this issue has been resolved to Mecklenburg County's satisfaction. The problem was explained and the corresponding work request ticket was closed.

85. Manatron understands Plaintiff's threats of taking the "matter" before the county commission as further attempts to intimidate Manatron and its customers as well as influence Manatron's answer to Plaintiff's Complaint.

86.     Further, Plaintiff's knowledge of the alleged security warning issue is based upon the confidential and proprietary information, training, and knowledge Plaintiff acquired while working for Manatron.  Such technical information about the Mecklenburg County website is not available to the public and, as a result, the sharing of such information is prohibited by the Nondisclosure Agreement.

87.     The public sharing of such information via Plaintiff's YouTube video is also prohibited by the Nondisclosure Agreement.

88.     On April 1, 2010, Plaintiff again emailed counsel for Manatron.  (*See* Plaintiff's April 1, 2010 Email to Manatron entitled "potentially incendiary error for government," a true and correct copy of which is attached hereto as Exhibit 14.)  In most pertinent part, Plaintiff attaches news articles discussing Manatron and taunts, "[d]o you still consider your bully tactics justified?"

89.     On April 3, 2010, Plaintiff again attempts to taunt counsel for Manatron in an email entitled "Collision Course."  (*See* Plaintiff's April 3, 2010 Email to Manatron entitled "Collision Course," a true and correct copy of which is attached hereto as Exhibit 15.)  Upon information and belief, Plaintiff refers to a complaint filed against Manatron in an unrelated lawsuit and then asks, "[d]o you mind if I help them out?"

90.     Upon information and belief, in or before January 2010, Plaintiff contacted Bob Hansen, a County official for Hubbard County, Minnesota.

91.     Hubbard County, Minnesota, has acquired Manatron software through the Minnesota Counties Computer Cooperative ("MCCC").  MCCC is the direct customer of Manatron.

92.     Upon information and belief, upon Plaintiff's request, Mr. Hansen provided Plaintiff with a list of Minnesota counties that had, at that time, suspended implementation of Manatron's software.  Upon information and belief, Mr. Hansen made clear to Plaintiff that Hubbard County had not decided to not move forward with Manatron software at some future time.

93.     Upon information and belief, having been unable to persuade Mr. Hansen to terminate Hubbard County's contract with MCCC regarding the use of Manatron's products, Plaintiff contacted a different Hubbard County official: Jack Paul, County Coordinator for Hubbard County.

94.     On April 7, 2010, Plaintiff emailed Mr. Paul and stated: "I am a disgruntled former Manatron employee from their GRM division.  I did not have exposure to the tax division or any knowledge of what happened in MN.  But I have seen an absolute slew of problems in other jurisdictions not related to the complicated tax code in your state."  (*See* Plaintiff's April 7, 2010 Email to Jack Paul entitled "Other Counties," a true and correct copy of which is attached hereto as Exhibit 16.)  These statements are false.

95.     Upon information and belief, Plaintiff has no knowledge of tax billing and collection systems, Minnesota tax laws, or any of Manatron's Minnesota projects.

96.     Upon information and belief, any and all delays occurring in any of Manatron's Minnesota projects have directly resulted from issues arising from Minnesota's complicated tax and assessment codes.

97.     Plaintiff's April 7, 2010 email further states:  "You don't have to answer this but has the county simply asked for their money back?  As a member of MNCC [sic] I wonder if you could make a motion to ask for a refund regardless of the contract.  Anyway, good luck and I

will be in touch.  If you can help locate a copy of the contract for me that would be much appreciated."

98.    These statements are an attempt by Plaintiff to persuade Hubbard County to terminate its contract with and/or seek a refund from MCCC.  Further, Plaintiff indicates his intent to continue contacting Mr. Paul and, without reason, requests a copy of the MCCC contract through which Manatron provides its products and services to Hubbard County.

99.    Plaintiff's email further states: "I was hit with a cease and desist letter back in November for communicating with Manatron customers as I am communicating with you now.  The [sic] threatened Hell's wrath over any *inferences* that there may be staffing issues at Manatron.  I didn't directly say that but there [sic] staffing is messed up in some fashion or there wouldn't be this many problems."

100.    Such statements regarding Manatron's staffing are false.  Further, any knowledge Plaintiff has regarding the internal staffing of Manatron is based upon confidential and proprietary information Plaintiff acquired during his employment.   The sharing of such information is prohibited by the Nondisclosure Agreement.

101.    Plaintiff's April 7, 2010 email also states:  "I would think if [Manatron's] radar was working at all that it would be in their interest to write both of us some checks."

102.    Manatron understands this statement, made to a user of Manatron's products and services through the MCCC, as an indication from Plaintiff that it is his intent to continue contacting Manatron customers and users of Manatron's products and services until he is offered some form of monetary compensation.

103.    Finally, with regard to Plaintiff's April 7, 2010 email, Plaintiff indicates that it is his intent to continue contacting Mr. Paul, stating "[w]e're likely going to have to exchange notes

anyway since your correspondence with Manatron should be pertinent to my case" and, later, "I will be in touch."

104.    Upon information and belief, neither Plaintiff nor the present lawsuit has any connection to Mr. Paul, Mr. Hansen, or Hubbard County.

105.    Upon information and belief, Plaintiff's emails to Hubbard County officials have caused injury to Manatron's business relationship with MCCC as well as with Hubbard County through MCCC, have harmed the likelihood of Hubbard County's future use of Manatron products and services, have injured Manatron's reputation, and have subjected Manatron to ridicule in its business relationship.

106.    On April 12, 2010, Plaintiff again emailed counsel for Manatron.  (*See* Plaintiff's April 12, 2010 Email to Manatron entitled "Nikish vs. Manatron," a true and correct copy of which is attached hereto as Exhibit 17.)   Plaintiff references an unrelated lawsuit, Nikish v. Manatron, and accuses Manatron of "torturous [sic] interference" under the facts of the unrelated case.

107.    Plaintiff threatens: "If I have to go on the offensive I'll gladly publicize it."

108.    Upon information and belief, it is Plaintiff's intent to use the allegations against Manatron in the unrelated "Nikish" lawsuit as additional defamatory content to send to Manatron's current and prospective customers.

109.    On April 14, 2010, in response to Defendant Manatron's motion requesting and the Court's Order allowing an extension of time for Manatron to file its response to Plaintiff's Complaint, Plaintiff sent counsel for Manatron an email threatening, "[i]f I have to oppose you then things can get very, very messy for third parties including the possibility of cross claims and

customer fallout."  (*See* Plaintiff's April 14, 2010 Email to Manatron entitled "Extended Time," a true and correct copy of which is attached hereto as Exhibit 18.)

110.    On April 21, 2010, Plaintiff again emailed counsel for Manatron.  (*See* Plaintiff's April 21, 2010 Email to Manatron entitled "Montgomery County Indiana Moves Forward," a true and correct copy of which is attached hereto as Exhibit 19.)  Plaintiff alleges that he has located 20 counties that are under "duress" from Manatron.  Plaintiff details his theories on why he thinks counties are allegedly voicing concerns about Manatron's products and concludes: "[i]f this isn't due to lack of staffing which you allege that I allege, then maybe it's more sinister.  Maybe it's plain old fashioned fraud.  If it isn't fraud then it is some type of negligence."

111.    Further, Plaintiff indicates in the April 21, 2010 email that he will be creating a website on which he will be posting all materials related to this lawsuit.

112.    The creation of such a website by Plaintiff poses a significant threat to Manatron of further future defamatory and injurious actions, statements, and publications by Plaintiff.

## MANATRON'S FIRST COUNTERCLAIM:

### Libel *Per Se* or, in the Alternative, Libel *Per Quod*

113.    Defendant Manatron adopts, as if fully set forth herein, the allegations of Paragraphs 1-112 of Defendant's Counterclaims above.

114.    Plaintiff has published false written and typed correspondence which, when considered alone without explanatory circumstances, impeaches Defendant in its trade or profession and subjects Defendant to ridicule, contempt, or disgrace.  As described in greater detail, *supra¸* Plaintiff sent numerous emails and other written communications to Manatron customers and other third parties impugning Manatron's business and products.  These false statements were intended to impeach Defendant's reputation and dissuade customers and third

parties from continuing business relations with Manatron. As a result, Plaintiff has committed libel *per se* against Defendant Manatron.

115. Each and every email and other written correspondence contained false and defamatory statements of or concerning Defendant.

116. Each and every email and other written correspondence was a publication to a third party.

117. Each and every email and other written correspondence, when considered alone without explanatory circumstances, tends to impeach Defendant in its trade or profession and subject Defendant to ridicule, contempt, or disgrace.

118. Plaintiff's false statements touch Defendant in its special trade or occupation and contain imputations necessarily hurtful in their effect on Defendant's business.

119. The false, defamatory statements were published by Plaintiff and were uttered of Defendant in its business relation.

120. Alternatively, to the extent the above-referenced false publications are not obviously defamatory, they become so when considered with innuendo, colloquium, and explanatory circumstances.

121. As described in greater detail, *supra*, Plaintiff knowingly published false statements to Manatron customers and other third parties with the intention to defame Defendant. Such libelous publications were understood by those to whom they were published as defamatory.

122. When considered in light of the surrounding circumstances, including those facts detailed above supporting Defendant's counterclaims of breach of contract, unfair and deceptive trade practices, punitive damages, and injunctive relief, Plaintiff's statements to Manatron

customers and other third parties become apparently defamatory. As a result, Plaintiff has committed libel *per quod* against Defendant.

123. As a proximate result of Plaintiff's commission of libel *per se* or, in the alternative, libel *per quod*, Defendant has suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

124. In addition, Defendant has suffered specific damages and losses arising from Plaintiff's harm to Defendant's current and prospective business contracts as well as ongoing and lasting injury to Defendant's business reputation and business relationships.

## MANATRON'S SECOND COUNTERCLAIM:

### Breach of Contract

125. Defendant Manatron adopts, as if fully set forth herein, the allegations of Paragraphs 1-124 of Defendant's Counterclaims above.

126. Plaintiff executed a Noncompete and Nondisclosure Agreement with Defendant Manatron.

127. The Noncompete and Nondisclosure Agreement is a valid, binding, and enforceable contract.

128. The Noncompete and Nondisclosure Agreement was supported by valuable consideration.

129. As described in detail, *supra*, Plaintiff executed his Noncompete and Nondisclosure Agreement at the time of his hire, and Manatron's offer of employment to Plaintiff was contingent upon his execution of the Noncompete and Nondisclosure Agreement.

130. Plaintiff breached the Noncompete and Nondisclosure Agreement.

131.   Plaintiff breached the Noncompete and Nondisclosure Agreement by contacting numerous Manatron customers as well as, upon information and belief, other third parties and disclosing to those customers and third parties Manatron's confidential and/or proprietary information in violation of the Noncompete and Nondisclosure Agreement.

132.   Plaintiff's breach of the Noncompete and Nondisclosure Agreement was a material breach and thus is actionable under North Carolina law.

133.   As a proximate result of Plaintiff's breach of the Noncompete and Nondisclosure Agreement, Defendant Manatron suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

## MANATRON'S THIRD COUNTERCLAIM:

## Unfair and Deceptive Trade Practices, N.C. GEN. STAT. § 75-1.1

134.   Defendant Manatron adopts, as if fully set forth herein, the allegations of Paragraphs 1-133 of Defendant's Counterclaims above.

135.   Plaintiff's willful and wrongful actions, as set forth above, were unfair and deceptive.  Plaintiff's actions were unethical, unscrupulous, and had a tendency to deceive.

136.   Plaintiff's actions were immoral, unethical, oppressive, unscrupulous, or substantially injurious.

137.   Plaintiff's actions were wrongful as evidenced by the timing, subterfuge, and purpose.  Plaintiff's actions were not a reasonable or bona fide attempt to protect Plaintiff's interests.

138.   Plaintiff's unfair and deceptive acts affected commerce.

139.   Plaintiff's unfair and deceptive trade practices proximately caused injury to Defendant in excess of $75,000.

140.     Defendant's business has been injured as a direct and proximate result of Plaintiff's willful actions, and, pursuant to N.C. GEN. STAT. § 75-16, Defendant is entitled to treble damages as a result.

141.     Defendant is further entitled to reasonable attorneys' fees and costs pursuant to N.C. GEN. STAT. § 75-16.1.

## MANATRON'S FOURTH COUNTERCLAIM:

### Punitive Damages – N.C. GEN. STAT. § 1D-15

142.     Defendant Manatron adopts, as if fully set forth herein, the allegations of Paragraphs 1-141 of Defendant's Counterclaims above.

143.     Defendant is entitled to compensatory and special damages as set forth above.

144.     Plaintiff's actions involved malicious, willful and wanton conduct.

145.     Plaintiff consciously and intentionally disregarded with indifference the rights of Defendant.

146.     Plaintiff knew or should have known that his malicious, willful and wanton conduct was reasonably likely to result in injury, damage, and other harm to Defendant.  Such actions amounted to more than gross negligence.

147.     Plaintiff's fraudulent, malicious, willful and wanton conduct, as described herein, *supra*, did proximately cause injury, damage, and harm to Defendant.

148.     Pursuant to N.C. GEN. STAT. § 1D-15, Defendant is therefore entitled to the recovery of punitive damages in an amount to be determined at trial.

46

## MANATRON'S FIFTH COUNTERCLAIM:

### Injunctive Relief

149.    Defendant Manatron adopts, as if fully set forth herein, the allegations of Paragraphs 1-148 of Defendant's Counterclaims above.

150.    Money damages alone will not, and cannot, compensate Defendant for the loss of business opportunities and ongoing harm to business relationships that Defendant has suffered and continues to suffer as a result of Plaintiff's wrongful actions.  Those actions have harmed and will in the future continue to harm Defendant and Defendant's business relationships.  As a result of Plaintiff's wrongful actions, Defendant has and will continue to have difficulty developing and maintaining customer and industry partner contacts and relationships, which will in turn negatively impact its ability to do business.

151.    By continuing his wrongful conduct, Plaintiff has demonstrated his willingness to continue to engage in the acts that violate those causes of action detailed herein, *supra*.  The injury to Defendant is immediate and irreparable.

152.    Defendant asserts that Plaintiff, unless enjoined, would continue to engage in the conduct alleged herein.

153.    There is a likelihood Defendant will prevail on the merits of this action.

154.    Should this Court grant injunctive relief to Defendant, the burden on Plaintiff would be slight compared to the injury to Defendant if it were not so granted.

155.    No injury to Plaintiff would result from an order requiring him to comport his actions with the law.

156.    The granting of an injunction will not violate the public interest.

WHEREFORE, Defendant Manatron respectfully prays that this Court:

a.      Issue a preliminary injunction enjoining Plaintiff from contacting, calling on or soliciting, either directly or indirectly, Defendant's current or prospective customers, employees, and other third-party users of Defendant's products and services;

b.      Upon final disposition, enter a permanent injunction enjoining Plaintiff from contacting, calling on or soliciting, either directly or indirectly, Defendant's current or prospective customers, employees, and other third-party users of Defendant's products and services;

c.      Award Defendant actual and compensatory damages in an amount to be determined at trial, but expected to exceed $75,000.00;

d.      Award Defendant punitive damages in an amount to be determined at trial;

e.      Award Defendant treble damages pursuant to N.C. GEN. STAT. § 75-16;

f.      Award Defendant the costs and expenses of this action, including litigation expenses and attorneys' fees pursuant to applicable law; and

g.      Grant such other and further relief as is just and necessary to afford complete relief to Defendant Manatron.

Dated this the 11th day of May, 2010.

Respectfully submitted,

s/H. Bernard Tisdale III
NC Bar No. 23980
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:  bernard.tisdale@ogletreedeakins.com


s/John A. Shedden
NC Bar No. 38499
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:  john.shedden@ogletreedeakins.com

## CERTIFICATE OF SERVICE

I, H. Bernard Tisdale, hereby certify that I have this day electronically filed the foregoing

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT AND MANATRON INC.'S**

**COUNTERCLAIMS AGAINST PLAINTIFF** with the Clerk of Court using the CM/ECF

system, which will send notification of the filing to the following person:

> Gregory J. Kudasz
> *Pro Se Plaintiff*
> 3611 Mount Holly Huntersville RD
> STE 204 Box 386
> Charlotte, NC 28216-8706
> Email:  greg@title11.org

Dated this the 11th day of May, 2010.

> s/H. Bernard Tisdale III
> NC Bar No. 23980
> *Attorney for Defendants*
> OGLETREE, DEAKINS, NASH,
>    SMOAK & STEWART, P.C.
> 201 South College Street, Suite 2300
> Charlotte, NC  28244
> Telephone:  704.342.2588
> Facsimile:  704.342.4379
> Email:  bernard.tisdale@ogletreedeakins.com

50