IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| GREGORY J. KUDASZ, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MANATRON INC., | ) | Civil Action No. 3:10CV106 |
| GREGORY A. EFFREIN, | ) | |
| DOES 1-30, INCLUSIVE, | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COME NOW Defendants Manatron, Inc. and Gregory A. Effrein ("Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and file this their Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Complaint.

## I. INTRODUCTION

The Complaint filed by Plaintiff Gregory J. Kudasz ("Plaintiff") alleges that Plaintiff's receipt of a "cease and desist" letter provides several grounds for declaratory judgment and, further, that Defendants defamed Plaintiff during his employment and eventual discharge. Specifically, Plaintiff's Complaint alleges causes of action for: (1) declaratory judgment of non-defamation; (2) declaratory judgment of non-libel; (3) declaratory judgment of non-tortious interference with business and/or contractual relations; (4) declaratory judgment of non-violation of states' laws; (5) declaratory judgment of non-violation of employee agreements; (6) libel *per se* or in alternate libel *per quod*; (7) slander *per se*; (8) defamation by conduct or in alternate slander *per se*; and (9) "mental anguish, future mental anguish, intentional infliction of emotional distress." (Doc. No. 2.)

All of the claims in Plaintiff's Complaint fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). First, in light of Defendants' Answer and Counterclaims, Plaintiff's claims for declaratory judgment are moot and should be dismissed. (Doc. No. 19.)

Second, Plaintiff fails to establish libel *per se* or libel *per quod,* as a matter of law, based upon any alleged publication of Plaintiff's "employee counseling statement." All the publications upon which Plaintiff relies to establish his libel claims took place outside the one year statute of limitations and, as a result, Plaintiff's claims are barred as a matter of law. Further, to the extent it is not barred, Plaintiff cannot establish libel *per se* because the statement fails to impeach Plaintiff in his trade or profession, or subject Plaintiff to ridicule, contempt or disgrace. In addition, also to the extent it is not barred, Plaintiff cannot establish libel *per quod* because Plaintiff fails to allege circumstances that would indicate intent to defame Plaintiff or that would support that the counseling statement "suppressed" Plaintiff's wages. Finally, if not found to be barred by the statute of limitations, regardless of whether libel exists in either form, any alleged publications were made under a qualified privilege and are not actionable.

Third, Plaintiff fails to state a claim for slander *per se* as a matter of law because Plaintiff cannot establish that the alleged statements impeached Plaintiff in his trade, business, or profession. Further, regardless of the existence of slander *per se*, Plaintiff's claim fails because any alleged statements made in the presence of a third party were spoken under a qualified privilege and are not actionable.

Fourth, Plaintiff fails to state a claim for "defamation by conduct or in alternate slander *per se*" as a matter of law. Plaintiff cannot succeed on his "defamation by conduct" claim because such a claim is not recognized in North Carolina. Further, states that *do* recognize such a claim have found that defamation does not exist in situations nearly identical to those in the

2

present matter.  Plaintiff fails to state a claim for slander *per se* based upon Defendants' alleged actions because such a claim amounts to little more than a reiteration of "defamation by conduct" which is not actionable in North Carolina.  Further, Plaintiff has failed to allege actual spoken statements, rather than mere physical "actions," to support any claim for slander.

Finally, Plaintiff fails as a matter of law to adequately support a claim for either intentional or negligent infliction of emotional distress.[1]  Plaintiff's claim for intentional infliction of emotional distress fails because Plaintiff's allegations do not demonstrate "extreme and outrageous" conduct as a matter of law.  To the extent Plaintiff may be alleging a claim for negligent infliction of emotional distress, such a claim fails as a matter of law because Plaintiff's allegations do not demonstrate that Defendants engaged in negligent conduct.

## II. <u>ARGUMENT</u>

### A.    Applicable Legal Standard under Rule 12(b)(6)

For purposes of a Rule 12(b)(6) motion to dismiss, the Court must construe the Complaint in the light most favorable to the Plaintiff and take the Plaintiff's well-pleaded factual allegations as true.  *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1107 (1995).  However, the Court is not bound by the Plaintiff's legal conclusions, as the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the Complaint.  *Id.* (internal citation omitted).

The United States Supreme Court recently clarified the Rule 12(b)(6) standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), stating that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  Thus, a claim that

---

[1] While Plaintiff's Complaint only directly alleges "intentional" infliction of emotional distress, Plaintiff also generally alleges that "Manatron and Effrein negligently engaged in their conduct."  (Compl. ¶ 136.)  As such, Defendants address Plaintiff's claim as one for both intentional and negligent infliction of emotional distress.

fails to allege "enough facts to state a claim to relief that is plausible on its face" should not survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* at 570; *see also Hunt v. Mortgage Elec. Registration*, 522 F. Supp. 2d 749, 752 (D.S.C. 2007) (granting defendants' motion to dismiss where the plaintiff's complaint was full of conclusory statements with insufficient factual allegations). Furthermore, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted).

**B.     Plaintiff's Claims for Declaratory Judgment are Moot and Should be Dismissed**

Plaintiff's first five causes of action allege claims for declaratory judgment. All such claims are made moot by Defendants' Answer and Counterclaims and should be dismissed.

"'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States v. Hardy,* 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)). A declaratory judgment cannot be issued on a matter once it has become moot. *See Cole v. Champion Enterprises, Inc.,* 496 F. Supp. 2d 613, 632 (M.D.N.C. 2007) (quoting 10B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2757 (3d ed. 1998)). To the extent a declaratory judgment may still be considered, the Court may, in its remedial discretion, choose not to issue a decision:

> Remedial discretion is often relied upon to determine that the prospective benefit of [a] . . . declaratory judgment . . . is too slight to justify decision. Closely related concerns also are expressed through a concept of discretionary judicial administration that focuses on the importance of deciding or avoiding decision, and the need to conserve judicial resources.

*Krehbiel v. Cooper,* No. 1:08CV276, 2008 WL 5120622, at *3 (M.D.N.C. Dec. 4, 2008) (internal citation omitted).[2]

---

[2] All unpublished decisions referenced in this memorandum are attached hereto.

Plaintiff's Complaint requests declaratory judgments on five causes of action: (1) declaratory judgment of non-defamation; (2) declaratory judgment of non-libel; (3) declaratory judgment of non-tortious interference with business and/or contractual relations; (4) declaratory judgment of non-violation of states' laws; and (5) declaratory judgment of non-violation of employee agreements. (Doc. No. 2.) On May 11, 2010, Defendants filed their Answer and Counterclaims. (Doc. No. 19.) Specifically, Defendant Manatron alleges the following counterclaims against Plaintiff: (1) libel *per se*, or in the alternative, libel *per quod*; (2) breach of contract; (3) unfair and deceptive trade practices; (4) punitive damages; and (5) injunctive relief. (*Id*.)

Manatron's counterclaims address the same facts, transactions, and occurrences as well as underlying key legal issues alleged in Plaintiff's Complaint as the basis for Plaintiff's requests for declaratory judgment. As a result, Manatron's counterclaims have altered Plaintiff's theoretical questions of liability into active, ripe claims and controversies against Plaintiff. It would waste both judicial time and resources for this Court to address the same events and issues two times within the same lawsuit; first, in a declaratory, speculative manner under Plaintiff's claims and, second, in a present and actual manner under Manatron's counterclaims. Indeed, Plaintiff's claims for declaratory judgment have become redundant and moot in light of Manatron's counterclaims. As a result, Plaintiff's requests for declaratory judgment fail to state a claim upon which relief should be granted, and Plaintiff's claims should be dismissed.

### C. Plaintiff's Claim for Libel *Per Se* or in the Alternate Libel *Per Quod* ("Claim Six") Fails to State a Claim Upon Which Relief Can Be Granted

In his sixth cause of action, Plaintiff claims that Defendants committed a libel *per se*, or in the alternate, "libel *per quod*," by allegedly sharing an employee counseling statement with two Manatron employees as well as "details" from the statement with personnel of the Register

of Deeds office. Plaintiff's claims are barred by the statute of limitations and must be dismissed. To the extent the Court may find such claims are not barred, Plaintiff cannot succeed in establishing libel *per se* or libel *per quod* as a matter of law and his claims should be dismissed.

### 1. Plaintiff's Claims for Libel *Per Se* and Libel *Per Quod* are Barred by the Statute of Limitations and Must be Dismissed

Claims for defamation must be brought within one year after publication of the allegedly defamatory statement. N.C. GEN. STAT. § 1-54(3) (concerning libel and slander); *see also Gibson v. Mut. Life Ins. Co. of N.Y.,* 465 S.E.2d 56, 58 (N.C. Ct. App. 1996) ("The statute of limitation for defamation is one year under N.C. Gen. Stat. § 1-54(3) (1983).").

Plaintiff's Complaint alleges the employee counseling statement was published to three individuals: Mary Gephart, Mary Langley, and, "upon information and belief," "personnel at the Register of Deeds office." (Compl. ¶¶ 45-46, 60, 65.) Plaintiff's Complaint was filed on March 9, 2010. (Doc. No. 2.) Plaintiff's Complaint alleges that the publication to Ms. Gephart took place "[o]n or about February 1, 2008," *over two years* before the filing of the Complaint. (Compl. ¶¶ 45-46.) Plaintiff's Complaint alleges that the publication to Ms. Langley took place "[o]n or about March 30, 2008," *nearly two years* before the filing of the Complaint. (Compl. ¶ 60.) Finally, while Plaintiff fails to supply a date and merely speculates that Manatron may have communicated "details" of the allegedly false statement to "personnel at the Register of Deeds office," it is reasonable to assume that the alleged publication would have taken place during or about the same time period as the other alleged publications. Even giving Plaintiff the benefit of reasonable doubt and assuming an additional ten months passed after the alleged March 30, 2008

publication to Ms. Langley, any alleged publication to the personnel of the Register of Deeds office would *still* be outside the one year statute of limitations.[3]

Thus, Plaintiff's claims for libel *per se* or, in the alternate, libel *per quod* are barred and must be dismissed because all the alleged publications upon which Plaintiff relies took place outside the one year statute of limitations.

> **2.** **To the Extent Plaintiff's Claim for Libel *Per Se* is Not Barred by the Statute of Limitations, Plaintiff Fails to State a Claim Upon Which Relief can be Granted and His Claim Should be Dismissed**

Under North Carolina law, libel *per se* is "'a publication which, when considered alone without explanatory circumstances:[4] (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace.'" *Boyce & Isley, PLLC v. Cooper,* 568 S.E.2d 893, 898 (N.C. Ct. App. 2002) (quoting *Phillips v. Winston-Salem/Forsyth Co. Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (N.C. Ct. App. 1994), *disc. review denied*, 340 N.C. 115, 456 S.E.2d 318 (N.C. 1995)). However, North Carolina courts have "consistently set a high threshold for plaintiffs attempting to allege libel *per se*." *Ward v. Jett Props., LLC,* No. COA08-1508, 2010 WL 346459, at *4 (N.C. Ct. App. Feb. 2, 2010). Plaintiff claims Defendants' alleged sharing of the "employee counseling statement" impeached him in his trade and/or profession as well as subjected him to ridicule, contempt or disgrace. Plaintiff has failed to present allegations sufficient to support either basis for libel *per se* as a matter of law.

---

[3] In fact, Plaintiff would not be within one year of the filing of his Complaint for approximately an additional eleven months and several days after the alleged publication to Ms. Langley.

[4] More particularly, publications that are libel *per se* must be "obviously defamatory" and "alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances." *Robinson v. Nationwide Ins. Co.,* 159 S.E.2d 896, 899 (N.C. 1968) (internal citations and quotations omitted).

### a. The Employee Counseling Statement Does Not Impeach Plaintiff in His Trade and/or Profession as a Matter of Law

To be actionable *per se* on the basis of impeaching Plaintiff in his trade and/or profession, the allegedly false words "(1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business." *Clark v. Brown,* 393 S.E.2d 134, 137 (N.C. Ct. App. 1990) (quoting *Ellis v. Northern Star Co.*, 288 S.E.2d 127, 130 (N.C. 1990)). "It is not enough that the words tend to injure a person in his business. To be actionable *per se*, they must be uttered of him in his business relation." *Id.* Further, "[i]n a business context, a statement that does not 'assert any illegal or wrongful activity' by the plaintiff, generally does not rise to the level of defamation recognized under North Carolina law." *Diagnostic Devices, Inc. v. Doctor Diabetic Supply, Inc.,* No. 3:09CV135, 2010 WL 143094, at *2 (W.D.N.C. Jan. 11, 2010) (quoting *Nucor Corp. v. Prudential Equity Group, LLC,* 659 S.E.2d 483, 487 (N.C. Ct. App. 2008)). Under these standards, the employee counseling statement fails to establish libel *per se*.

First, nothing stated in the employee counseling statement "touches the plaintiff in his special trade or occupation." Plaintiff's Complaint quotes language from the document stating that Plaintiff "'failed to complete [his] daily tasks…which resulted in two separate interruptions in production'" and that his actions further "'resulted in Manatron having to issue customer credit.'" (Compl. ¶¶ 48, 56.) Such statements do not assert that Plaintiff is bad at his job or that Plaintiff lacks knowledge or skill in his profession. Indeed, these statements do not even *discuss* Plaintiff's "special trade or occupation." Rather, the statements record an isolated disciplinary incident that has nothing to do with Plaintiff's greater "trade or occupation."

Second, because Plaintiff's specific trade or occupation is not even addressed by the counseling statement, there can be no "imputation necessarily hurtful in its effect on his

8

business."  Again, the statement does not impugn Plaintiff's work or his ability to conduct business.  Thus, the document will have no impact that is "hurtful" on Plaintiff's "business."

Finally, the counseling statement does not go nearly so far as to allege that Plaintiff took part in any "illegal or wrongful activity."  As a result, the statement should be regarded as nothing more than an internal employment document that recorded a single disciplinary incident, as it was intended.  The employee counseling statement fails to meet the standards necessary for libel *per se* as a matter of law and, as a result, Plaintiff's claim should be dismissed.

**b.**    **The Employee Counseling Statement Does Not Subject Plaintiff to Ridicule, Contempt or Disgrace as a Matter of Law**

The employee counseling statement is nothing more than a record created during the normal course of business to describe a single disciplinary incident in plain non-derogatory language.  As a result, it fails to even address circumstances that reasonably would subject one to such extreme reactions as ridicule, contempt or disgrace.  Even a brief survey of cases in North Carolina makes this abundantly clear.  *See, e.g., Stutts v. Duke Power Co.,* 266 S.E.2d 861, 865 (N.C. Ct. App. 1980) ("alleged false statements made by defendants, calling plaintiff 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se"); *Robinson*, 159 S.E.2d at 899 (insurance company's statement that it was cancelling the plaintiff's policy because of his "'infavorable [sic] personal habits'" was not libelous *per se*); *Penner v. Elliott,* 33 S.E.2d 124, 125 (N.C. 1945) (no claim for libel *per se* existed for statements that the plaintiff was a man who would not pay his debts, would not work, and was "a man that respectable people had best not have anything to do with").  Clearly, the employee counseling statement does not create such potential for ridicule, contempt or disgrace that it would provide a basis for actionable libel *per se* as a matter of law.  As a result, Plaintiff's claim should be dismissed.

9

**3.** **To the Extent Plaintiff's "Alternate" Claim for Libel *Per Quod* is Not Barred, Plaintiff Fails to State a Claim Upon Which Relief can be Granted and His Claim Should be Dismissed**

Statements that are "libel *per quod*" are those "publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances." *Ellis v. Northern Star Co.,* 388 S.E.2d 127, 130 (N.C. 1990) (internal citation omitted). "[T]here must be a publication or communication knowingly made by the defendant to a third person. The publication must have been intended by defendant to be defamatory and had to be understood as such by those to whom it was published . . . [f]or these reasons, both the innuendo and special damages must be proven." *Holleman v. Aiken,* 668 S.E.2d 579, 589 (N.C. Ct. App. 2008) (internal citation omitted); *Badame v. Lampke*, 89 S.E.2d 466, 467 (N.C. 1955). Under these standards, Plaintiff has failed to allege any additional circumstances that would indicate the employee counseling statement is defamatory.

First, the "employee counseling statement" is nothing more than a recording of an isolated disciplinary incident and Plaintiff's Complaint fails to allege any additional circumstances that change this fact. It was not written with the intent to defame Plaintiff and was not published to third parties who would take the statement as defamatory. Further, any alleged "publication" of the statement was merely to a select few, all of whom had a corresponding interest in receiving the information.[5]

Second, Plaintiff's Complaint fails to allege circumstances giving rise to special damages or demonstrating that the counseling statement had injurious effect. Plaintiff's Complaint alleges that the statement caused "suppression of wages." (Compl. ¶ 123.) However, by Plaintiff's own admission, the employee counseling statement was issued on February 1, 2008, *over one year*

---

[5] As addressed below, any alleged publications were subject to a qualified privilege.

*prior* to his discharge on April 28, 2009. (Compl. ¶¶ 45, 66.) In support, Plaintiff does not allege *any facts* supporting that the counseling statement somehow decreased or suppressed his wages during the course of his employment or that it, standing alone, caused his eventual discharge. Thus, Plaintiff's claim for libel *per quod* fails to state a claim upon which relief can be granted and must be dismissed with prejudice.

4.      **To the Extent Plaintiff's Claims for Libel *Per Se* and Libel *Per Quod* are Not Barred, Any Alleged Publication of the Employee Counseling Statement was Made Pursuant to a Qualified Privilege**

Should the Court find that the "employee counseling statement" could be libelous *per se* or *per quod*, Plaintiff's libel claims fail as a matter of law because any alleged publications of the statement were made under a qualified privilege.

Whether a communication is privileged is a question of law.[6] *Kinesis Advertising, Inc. v. Hill,* 652 S.E.2d 284, 297 (N.C. Ct. App. 2007). "A qualified privilege exists when a communication is made (1) on a subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest." *Id.* "The essential elements for the qualified privilege to exist are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a manner and to the proper parties only." *Id.* Plaintiff's Complaint alleges the employee counseling statement was published to three individuals: Mary Gephart, Vice President of Human Resources and Administration at Manatron; Mary Langley, a Manatron Team Leader; and, "upon information and belief,"

---

[6] If the circumstances of the alleged communication are in dispute, the existence of a privilege becomes a mixed question of law and fact. *Kinesis Advertising, Inc.,* 652 S.E.2d at 297. However, as the "circumstances" of Plaintiff's Complaint are taken as true for purposes of the motion to dismiss, the existence of the qualified privilege is purely one of law.

"personnel at the Register of Deeds office." (Compl. ¶¶ 45-46, 60, 65.) All such publications were subject to a qualified privileged.

As the head of Human Resources and Administration, it is beyond any doubt that Mary Gephart had and continues to have an interest, right and duty to receive, review and file such employee records as the "employee counseling statement." Even Plaintiff is forced to admit this conclusion, stating in reference to alleged statements made by Effrein that "Effrein could have chosen to have a privileged Manatron employee accompany him [to Plaintiff's termination meeting] such as another manager or member of the human resources team . . . ." (Compl. ¶ 84.)

Mary Langley was a Team Leader at Manatron. While Ms. Langley did not work directly over Plaintiff, she was a management level employee with supervisory responsibilities. As a result, Ms. Langley had an ongoing interest, right and duty to exercise her supervisory and managerial role and have access to such internal employee records as the employee counseling statement. As a result, the good faith sharing of Plaintiff's employee counseling statement with Ms. Langley was within a qualified privilege.

As a Manatron employee, Plaintiff was assigned to work as Manatron's sole on-site representative in relation to the services Manatron was providing to Mecklenburg County. As a result, the comments allegedly made to "personnel at the Register of Deeds" office concerned Plaintiff's performance of his Manatron job in servicing Manatron's customer, the Mecklenburg County Register of Deeds. As the conduct forming the basis of the alleged publication to the Register of Deeds office originated with his work in that office, any alleged comments would be qualifiedly privileged. Plaintiff confirms this in his Complaint alleging that, while he was a Manatron employee, he was also "essentially a loaned employee working fulltime, onsite at the Mecklenburg County Register of Deeds office in Charlotte, North Carolina. The majority of

[Plaintiff's] time was spent serving this single customer who [sic] he took most of his day to day instructions." (Compl. ¶ 12.)

Under such circumstances, any alleged communication by Manatron to personnel of the Register of Deeds office was made under a qualified privilege. As the entity for which Plaintiff actually worked on a daily basis, Register of Deeds office personnel had a strong interest, right and duty to know information pertaining to Plaintiff's conduct while working in the Register of Deeds' office. Indeed, under Plaintiff's work arrangement, if there arose a conduct or other issue with Plaintiff, it would more immediately and imminently impact the Register of Deeds office than it would Manatron. As a result, any alleged good faith publication of "details" of the employee counseling statement to personnel of the Register of Deeds office ultimately originated from that office and was made pursuant to a qualified privilege.

Any alleged publications to Mary Gephart, Mary Langley and/or personnel of the Register of Deeds office were made under a qualified privilege as matter of law and, as a result, Plaintiff's claims for libel *per se* and libel *per quod* must be dismissed.

### D. Plaintiff's Claim for Slander *Per Se* ("Claim Seven") Fails to State a Claim Upon Which Relief Can Be Granted

In his seventh cause of action, Plaintiff claims that statements made by Defendant Effrein during Plaintiff's termination meeting are actionable as "slander *per se*." Plaintiff cannot succeed as a matter of law and his claim for slander *per se* must be dismissed.

Under North Carolina law, "slander *per se*" is "a false statement which is orally communicated to a third person and amounts to: (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Barker v. Kimberly-Clark Corp.,* 524 S.E.2d 821, 824 (N.C. Ct. App. 2000) (citing *Averitt v. Rozier,* 119

N.C. App. 216, 218, 458 S.E.2d 26, 28 (N.C. Ct. App. 1995)). "To establish a claim for slander *per se*, a plaintiff must prove: (1) defendant spoke base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." *Friel v. Angell Care Inc.,* 440 S.E.2d 111, 113-14 (N.C. Ct. App. 1994) (internal citations omitted). Plaintiff fails to state a claim upon which relief can be granted because: (1) Effrein's alleged statements fail to impeach Plaintiff in his trade or profession, and (2) any of the alleged statements were made under a qualified privilege.

### 1. Effrein's Alleged Statements Do Not Impeach Plaintiff in His Trade, Business, or Profession as a Matter of Law

The Supreme Court of North Carolina has clarified the guidelines a court must follow in evaluating whether slander *per se* exists due to statements that allegedly "impeach the plaintiff in his trade, business, or profession":

> [I]n order to be actionable without proof of special damage, the false words (1) must touch the plaintiff in his special trade or occupation, and (2) must contain an imputation necessarily hurtful in its effect on his business. *That is to say, it is not enough that the words used tend to injure a person in his business*. To be [actionable] per se, they must be uttered of him in his business relation . . . Defamation of this class ordinarily includes charges made by one trader or merchant tending to degrade a rival by charging him with dishonorable conduct in business.

*Badame*, 89 S.E.2d at 468 (statements by a competitor to sewing machine retailer's customers that plaintiff engages in "shady" deals is defamatory *per se*) (emphasis added) (internal citations omitted); *contrast Williams v. Rutherford Freight Lines, Inc.,* 179 S.E.2d 319, 322-23 (N.C. Ct. App. 1971) (union leader's statements that plaintiff is a gangster and an "SOB" not defamatory on its face; *also quoting* Prosser, Law of Torts 3rd, 776, that to be actionable *per se*, "[t]he

statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's general character or qualities, where such special significance is lacking").  Under these standards, any alleged statements made by Effrein during Plaintiff's termination meeting are *not* actionable as slander *per se*.

Plaintiff's Complaint alleges that during Plaintiff's termination meeting, "Effrein stated that the reason [Plaintiff] was being terminated was because he stuck his tongue out at a senior manager and forced Register of Deeds employees to watch inappropriate videos in his work area."  (Compl. ¶ 71.)  These statements have *absolutely nothing* to do with Plaintiff's "trade, business or profession."  The statements do not impugn Plaintiff's knowledge, skills, or abilities in his field, they do not suggest that he is bad at his job or demean his performance, and they do not attack his work ethic.  Rather, the comments informed Plaintiff of the misconduct for which Plaintiff was being discharged, the exact kind of information one would expect to be shared at a termination meeting.  Plaintiff's claim for slander *per se* should be dismissed as a matter of law.[7]

### 2.     Effrein's Alleged Statements were Made Under a Qualified Privilege

Even should Effrein's alleged statements be found to provide a basis for slander *per se*, Effrein's statements were made under a qualified privilege and are not actionable.

As stated above, "[a] qualified privilege exists when a communication is made (1) on a subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest."  *Kinesis Advertising, Inc.*, 652 S.E.2d at 297.  "The

---

[7] Defendants further note that Effrein's alleged statements clearly do not subject Plaintiff to "ridicule, contempt or disgrace."  Indeed, there is no basis to find that Effrein's disclosure of the reasons for Plaintiff's discharge during a "closed door termination meeting" attended by only one other Manatron employee even approaches circumstances that reasonably could subject one to such extreme reactions.

15

essential elements for the qualified privilege to exist are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a manner and to the proper parties only." *Id.*

Any alleged statements made by Effrein during the termination of Plaintiff's employment fell within a qualified privilege. The termination meeting itself was held in a private executive office with the door closed and was attended by only three individuals: Defendant Effrein, Darryl Slade ("Slade"), and Plaintiff. As Vice President of Records Management, *the department in which Plaintiff worked*, Effrein had a clear interest, right and duty to oversee and participate in Plaintiff's termination meeting. Slade had a corresponding interest in attending the meeting because he was the Senior Technical Analyst on Plaintiff's Manatron work team, the Mecklenburg County team that would be most directly affected by Plaintiff's discharge. In addition, Slade was asked to attend the termination meeting for a legitimate business reason; that is, to represent Manatron as an employee-witness to the meeting as the only other employee available at the Mecklenburg County site. As a result, any statements uttered by Effrein in Slade's presence at the termination meeting were made under a qualified privilege.

Further, contrary to Plaintiff's legal assertion, Effrein's alleged statements clearly were made within the scope and purpose of the occasion. Indeed, Effrein's alleged statements go to the very heart and purpose of the termination meeting; that is, informing Plaintiff of the reasons for his discharge. Any determination to the contrary would lead to the illogical conclusion that termination meetings should never include a discussion of the reasons *why* the employee's employment is being terminated.

Finally, also contrary to Plaintiff's legal assertion, there is simply no factual basis alleged to support that Effrein's statements were made with any form of malice or bad faith. As Plaintiff

acknowledges, Effrein's alleged statements were made in reliance upon the investigation conducted by Mary Gephart, the Vice President of Human Resources and Administration. (*See* Compl. ¶ 76.) Effrein merely communicated to Plaintiff, in good faith, the findings of the Company's internal investigation and the basis for Plaintiff's discharge. As a result, Plaintiff's assertion that Effrein's statements were malicious or in bad faith because Effrein allegedly "knew or should have known" the investigation into Plaintiff's misconduct was a "sham" borders on the absurd.

Thus, any alleged statements made by Effrein during Plaintiff's termination meeting fall plainly within a qualified privilege as a matter of law and, as a result, Plaintiff's seventh cause of action fails to state a claim upon which relief can be granted and should be dismissed.

**E.** **Plaintiff's Claim for Defamation by Conduct or in the Alternate Slander *Per Se* ("Claim Eight") Fails to State a Claim Upon Which Relief Can Be Granted**

Plaintiff's claim for defamation by conduct fails as a matter of law because (1) North Carolina does not recognize a claim for "defamation by conduct"; and (2) state courts that have applied such a claim to similar facts have found no liability. Plaintiff's "alternate" claim for slander *per se* fails as a matter of law because (1) "slander *per se*" by "actions" amounts to a claim of "defamation by conduct" and, thus, also fails; and (2) Plaintiff has failed to allege any spoken statements to support a claim of slander.

**1.** **Defendant Fails to State a Claim for Defamation by Conduct Because Such a Claim is Not Recognized in North Carolina**

Plaintiff alleges that Defendants committed a defamatory act by escorting Plaintiff from the building after his employment was terminated. (Compl. ¶ 129.) After an exhaustive search of North Carolina state law regarding defamation, including federal law interpreting state law, Defendants have been unable to locate a single case recognizing "defamation by conduct" in

North Carolina.  Indeed, this Court has recently stated that "non-verbal conduct is generally immune from claims of defamation."  *Curry v. Philip Morris USA, Inc.,* No. 3:08cv609, 2010 WL 431692, at *5 (W.D.N.C. Feb. 4, 2010) (finding that when, upon the plaintiff's discharge, security personnel searched the plaintiff's car while she and a co-worker observed, the search itself was not defamatory).  As a result, this state has not adopted and does not recognize a cause of action for "defamation by conduct" and Plaintiff's claim must be dismissed.

Should the Court consider this novel state law issue, numerous states that do recognize "defamation by conduct" have found that being escorted from the building after being discharged does *not* constitute an act of defamation.  *See, e.g., Gay v. William Hill Manor, Inc.*, 536 A.2d 690, 693 (Md. Ct. Spec. App. 1988) (the mere act of employer in escorting employee from building after employment termination did not, without more, constitute defamatory "publication"); *Johnson v. Dillard's, Inc.*, No. 3:03-3445, 2007 WL 2792232, at *18 (D.S.C. Sept. 24, 2007) (being escorted out of employer-store by off-duty police officer found not to be a defamatory statement; "[o]ther courts have found that where a terminated employee was merely walked off the premises, even by a uniformed officer, the conduct was not defamatory as a matter of law"); *Brown v. Gino Morena Enters.,* 44 F. Supp. 2d 41, 52 (D.D.C. 1999) (indicating agreement that there is no defamation in having an employee escorted off the premises and stating that, in determining whether having an employee escorted off the premises should support defamation, a court should consider the public policy implications of subjecting an employer to potential liability for taking the precautionary action of calling for an escort to avoid possible disruption by a terminated employee); *see also, Bagby v. Gen. Motors Corp.,* 976 F.2d 919, 921 (5th Cir. 1992) ("Alone, the mere escorting of suspended workers out of the plant is not defamatory or indicative of malice.  Here, there is no summary judgment evidence of unjustified

or aggravating circumstances, such as handcuffing, drawing weapons, forcible ejection, or other factors that might elevate simple escorting to the level of defamation or malice."); *Davis v. John Crane, Inc.,* 633 N.E.2d 929, 938 (Ill. App. Ct. 1994) (security guard escort off employer's property not defamation *per se*); *Dubrovin v. Marshall Field's & Co. Employee's Credit Union,* 536 N.E.2d 800, 803 (Ill. App. Ct. 1989); *Bolton v. Dep't of Human Servs.*, 540 N.W.2d 523, 525-26 (Minn. 1995); *Theisen v. Covenant Med. Ctr., Inc.,* 636 N.W.2d 74, 85-86 (Iowa 2001) ("Proof that a terminated employee was simply escorted from the place of employment, without words or other conduct, has been held insufficient as a matter of law to establish a claim of defamation by dramatic pantomime. . . . The reason is that, in an employment context, such incidents are part of the everyday work environment") (internal citations omitted); *Rolsen v. Lazarus, Inc.,* Nos. C-990588, C-990627, 2000 WL 1434170, at *4 (Ohio Ct. App. Sept. 29, 2000).

Following these precedents, Plaintiff's alleged security escort after his discharge does not provide a basis for any form of defamation and, as a result, Plaintiff's claim should be dismissed.

### 2. Plaintiff Fails to State a Claim for Slander *Per Se* Based Upon Defendants' Actions

Plaintiff purports to "alternately" allege that Defendants' "actions" in discharging and escorting Plaintiff from the building amount to "expressions of speech" that are actionable as slander *per se*. In actuality, such an allegation offers no alternative claim at all. There is no difference between alleging "defamation by conduct" and alleging "slander *per se*" by "actions." As such, Defendants incorporate and reiterate those arguments above addressing Plaintiff's claim for "defamation by conduct" and request Plaintiff's claim for "slander *per se*" be dismissed.

To the extent further discussion is required, any claim for slander *per se* must be based upon *actual spoken statements*, not conduct. *See Curry,* 2010 WL 431692, at *5. As Plaintiff

19

has alleged no such statements in support of his eighth claim, Plaintiff's alternate claim for slander *per se* must be dismissed.

**F.      Plaintiff's Claim for Mental Anguish, Future Mental Anguish, Intentional Infliction of Emotional Distress ("Claim Nine") Fails to State a Claim Upon Which Relief Can Be Granted**

Plaintiff's ninth cause of action seeks to hold Defendants liable for allegedly causing Plaintiff "mental anguish." (Compl. ¶ 134.) While Plaintiff phrases his cause of action directly as a claim for intentional infliction of emotional distress ("IIED"), Plaintiff also alleges that Defendants "negligently engaged" in conduct causing Plaintiff "severe emotional distress." (Compl. ¶ 136.) For this reason, Defendants will address claims for both intentional and negligent infliction of emotional distress ("NIED").

Plaintiff's Complaint fails to state a claim upon which relief can be granted because (1) Plaintiff's allegations fail to demonstrate the "extreme and outrageous" conduct necessary to support a claim for IIED; and (2) Plaintiff failed to adequately allege that Defendants engaged in negligent conduct as required for a claim for NIED.

**1.      Plaintiff's Claim for IIED Fails Because Plaintiff's Allegations Fail to Demonstrate "Extreme and Outrageous" Conduct as a Matter of Law**

In order to state a claim of IIED under North Carolina law, a plaintiff must allege (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another. *Dickens v. Puryear,* 276 S.E.2d 325, 335 (N.C. 1981). Plaintiff's Complaint alleges conduct ranging from Manatron's mere sending of a standard cease and desist letter to the above-addressed instances of alleged libel and slander. (Compl. ¶¶ 134-135.) None of these events could "reasonably be so regarded" as being extreme and outrageous. *Briggs v. Rosenthal,* 327 S.E.2d 308, 311 (N.C. Ct. App. 1985).

Whether the conduct meets the "extreme and outrageous" standard is a question of law for the court to decide. *Id.* North Carolina defines this element as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.,* 340 S.E.2d 116, 123 (N.C. Ct. App. 1986), *disc. rev. denied,* 346 S.E.2d 140 (N.C. 1986). "[T]his Court has set a high threshold for a finding that conduct meets [this] standard." *Dobson v. Harris,* 521 S.E.2d 710, 715 (N.C. Ct. App. 1999), *rev'd in part on other grounds,* 530 S.E.2d 829 (N.C. 2000). This "standard of course excludes a great deal of conduct that is undoubtedly very bad and is properly considered reprehensible." *Walker v. Sullair Corp.,* Nos. 90-2124, 90-2132, 1991 WL 195754, at *3 (4th Cir. Oct. 3, 1991).

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion . . . .

*Briggs,* 327 S.E.2d at 311 (quoting Restatement (Second) of Torts § 46 cmt. d).

Even a brief comparison of the allegations of Plaintiff's Complaint to these standards demonstrates that Plaintiff has not alleged any conduct by Defendants that, as a matter of law, reaches the level of extreme and outrageous. Clearly, the sending of a standard cease and desist letter to Plaintiff fails to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Furthermore, the employee counseling statement contains no egregious language or intolerable allegations and the termination meeting conversation contained little more than a plain discussion of Manatron's reasons for discharging

Plaintiff.  None of these writings or conversations would ever be considered "intolerable in a civilized community" and, *at most*, merely reflect the exact sort of annoyances and petty oppressions that do not support IIED liability.  As a result, Plaintiff's Complaint fails to state a claim upon which relief can be granted and Plaintiff's claim for IIED should be dismissed.

> ### 2. Plaintiff's NIED Claim Fails as a Matter of Law Because Plaintiff Fails to Adequately Allege Defendants Engaged in Negligent Conduct

In order to state a claim of NIED under North Carolina law, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . and (3) the conduct did in fact cause the plaintiff severe emotional distress."  *Johnson v. Ruark Obstetrics and Gynecology Assocs., P.A.,* 395 S.E.2d 85, 97 (N.C. 1990) (internal citations omitted).  To sufficiently allege that the Defendants engaged in negligent conduct, Plaintiff must allege the breach of a legal duty owed by the Defendants that proximately causes injury to the Plaintiff.  *Guthrie v. Conroy,* 567 S.E.2d 403, 410-11 (N.C. Ct. App. 2002).

Plaintiff has failed to allege that either Defendant owed any specific legal duty to Plaintiff, and, consequently, that such a duty was negligently breached.  Indeed, if anything, Plaintiff has alleged only intentional acts by the Defendants; for instance, that Manatron sent a cease and desist letter to Plaintiff, that "Effrein caused a document to be published," that "Manatron improperly communicated confidential details of the . . . document," and that Effrein stated the reason for Plaintiff's termination in the presence of Slade.  (Compl. ¶¶ 15, 45, 65, 71, respectively.)  Even Plaintiff's claim is directly phrased as one for IIED and merely alleges in a single paragraph that Defendants "negligently engaged in their conduct."  (Compl. ¶ 136.)  Such

an isolated allegation, unsupported by the rest of the Complaint, is inadequate at best.[8]  As Plaintiff has not adequately alleged negligent conduct or the breach of any duty owed to Plaintiff by Defendants beyond a mere recitation of elements, Plaintiff's Complaint has failed to sufficiently plead a claim for NIED and, as a result, should be dismissed.

### III. CONCLUSION

WHEREFORE, for the reasons set forth above, Defendants move this Court to dismiss Plaintiff's Complaint against the Defendants in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated this the 9th day of June, 2010.

Respectfully submitted,

s/H. Bernard Tisdale III
NC Bar No. 23980
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:  bernard.tisdale@ogletreedeakins.com


s/John A. Shedden
NC Bar No. 38499
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:  john.shedden@ogletreedeakins.com

---

[8] To the extent Plaintiff may attempt to argue that such a bare elemental statement, without more, is enough to support a claim for NIED, Defendants note that such an unsupported allegation cannot survive the Rule 12(b)(6) standard.  As the Supreme Court has held, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## CERTIFICATE OF SERVICE

I, H. Bernard Tisdale, hereby certify that I have this day electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following person:

Gregory J. Kudasz
*Pro Se Plaintiff*
3611 Mount Holly Huntersville RD
STE 204 Box 386
Charlotte, NC 28216-8706
Email:  greg@title11.org

Dated this the 9th day of June, 2010.

s/H. Bernard Tisdale III
NC Bar No. 23980
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:  bernard.tisdale@ogletreedeakins.com