IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| GREGORY J. KUDASZ,<br>     Plaintiff,<br> v.<br><br>MANATRON INC.,<br>GREGORY A. EFFREIN,<br>DOES 1-30, INCLUSIVE,<br>     Defendants. | Civil Action No. 3:10CV106 |

## DEFENDANT MANATRON INC.'S RESPONSE TO
## PLAINTIFF'S MOTION TO DISMISS

COMES NOW, Defendant Manatron Inc.[1] ("Manatron") and submits this response to Plaintiff's Motion to Dismiss.[2]

## I.  INTRODUCTION

Plaintiff's motion asserts a number of alleged defects in Defendants' Answer to Plaintiff's Complaint and Manatron Inc.'s Counterclaims against Plaintiff (hereinafter, "Counterclaims") (Doc. 19). Plaintiff alleges Manatron's Counterclaims fail to state a claim upon which relief can be granted and fail to allege a short and plain statement of the claim showing that the pleader is entitled to relief in violation of Rules 12(b)(6) and 8(a)(2) of the Federal Rules of Civil Procedure, respectively. The vast majority of Plaintiff's arguments in support of dismissal involve extraneous facts not contained in Manatron's Counterclaims, or factual attacks on the allegations of Manatron's Counterclaims. The Counterclaims, however, must be taken as true for

---

[1] Defendant Gregory A. Effrein did not assert counterclaims against Plaintiff. (*See* Doc. 19.) Thus, this response is submitted only on behalf of Defendant Manatron and not Defendant Gregory A. Effrein.

[2] Plaintiff's motion to dismiss also includes a second "Motion to Strike," which Plaintiff describes as an "alternat[ive]" motion. (Doc. 20 at 2.) To the extent Plaintiff attempts to submit two motions in one document, he is prohibited by Local Civil Rule 7.1(C)(2). To the extent Plaintiff attempts to move to dismiss, or, in the alternative, strike certain paragraphs of Manatron's Counterclaims, Plaintiff fails to include any argument in support of this "alternat[ive]" theory in Plaintiff's Memorandum in Support of Motion to Dismiss Counterclaim. Such failure is a violation of Local Civil Rule 7.1(C). Plaintiff's motion should be denied on procedural grounds alone.

1

purposes of Plaintiff's motion to dismiss. As a result, the vast majority of Plaintiff's arguments are premature and should be denied. Plaintiff will have the opportunity to argue the factual basis of Manatron's Counterclaims in dispositive motions following discovery. The remaining minority of Plaintiff's arguments should substantively be denied as set forth below.

Plaintiff further alleges paragraphs 56, 57, 58, 67, 68, 69, 70, 71, 72, 73, 74, 88, 89, 106, 107, 108, 110, 111, and 112 of Manatron's Counterclaims should be stricken because each is "not related to any of [Manatron's] claims, are communications to [Manatron's] counsel as part of meet and confer, are included purely to harass and stymie Kudasz by adding time and expense to respond, and to puff up counter-complaint that would be nearly naked without them." (Pl. Mot. at 2.) For the reasons set forth herein, Plaintiff's motion should be denied.

## II.  ARGUMENT

### A.  Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that to assert a valid claim in a United States District Court, a plaintiff must file "[a] pleading that states a claim for relief [that] must contain: a short and plain statement of the claim showing that the pleader is entitled to relief." In order to overcome Rule 8(a)'s relatively liberal pleading standard through a Rule 12(b)(6) motion, a defendant must show either (a) that the facts alleged do not state a claim as a matter of law or (b) that insufficient facts have been alleged to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, 557-58 (2007).

A plaintiff need not allege "detailed factual allegations." *Id*. at 555. Rather "a plaintiff's obligation is to provide the 'grounds' of his 'entitlement to relief' [rather than mere] labels and conclusions and a formulaic recitation of the elements of a cause of action . . . ." *Id*. (internal citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the

speculative level," and this requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the cause of action]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 555-556 (internal quotations omitted). Importantly, in light of the factual arguments made by Plaintiff in his motion, in considering a motion to dismiss, a court must accept the plaintiff's factual allegations as true. *Giarratano v. Johnson*, 521 F.3d 298, 305 (4th Cir. 2008).

Plaintiff cannot meet his burden of showing that Manatron's claims either fail as a matter of law or contain insufficient factual pleadings. Accordingly, his motion should be denied.

**B.      Plaintiff's Motion to Dismiss Pursuant to Rule 12(b)(6)**

Plaintiff makes numerous arguments pursuant to Rule 12(b)(6) as to why Manatron's Counterclaims fail to state a claim upon which relief can be granted.

**1.      Manatron's Claim for Libel *Per Se*, or, In the Alternative, Libel *Per Quod,* States a Claim Upon Which Relief Can be Granted**

With regard to Plaintiff's motion to dismiss Manatron's claim for libel pursuant to Rule 12(b)(6), Plaintiff argues the following:

(1)      Libel cannot be asserted simultaneously with breach of contract;

(2)      Libel claim fails to state a claim because Manatron fails to allege specific examples of "false statements;"

(3)      Libel claim fails because Manatron alleges opinions, not false statements; and

(4)      Libel claim fails because Manatron fails to include any allegation of losses suffered as a result of Plaintiff's actions.[3]

---

[3] For a detailed discussion of Plaintiff's argument that Manatron's claims, including its claims for losses and punitive damages, are barred by the Right to Petition of the First Amendment or the *Noerr-Pennington* Doctrine, *see* Section D, *infra*.

Each of Plaintiff's arguments is without merit. First, Plaintiff does not – and cannot – cite any authority for the proposition that Manatron is prohibited as a matter of law from simultaneously asserting claims for libel and breach of contract.[4]

Second, while Plaintiff argues Manatron's Counterclaims fail to specifically allege examples of "false statements," Plaintiff's own memorandum contradicts his argument. Plaintiff points to one example (among many) of Manatron's specific allegation of a false statement made by Plaintiff. (Pl. Mem. at 3 ("The only alleged example of a false statement at this point of the counterclaim is the statement 'slew of reported failures of new implementations, severe problems that affect constituents, and some very bad press.'" (quoting Counterclaims ¶ 40(c))).) Plaintiff attempts to explain away this "example" of a specific false statement alleged by Manatron by arguing that it is actually a true statement. Even if true, Plaintiff's argument is premature. For purposes of Plaintiff's motion to dismiss, Manatron has alleged that the statement is false: "In fact, Manatron has had fewer than five contracts terminated during the past five years, all of which were terminated for customer convenience reasons, not a failure by Manatron to meet contract requirements." (Counterclaims ¶ 40(c).) For purposes of Plaintiff's motion to dismiss, this Court must therefore treat Manatron's allegation as true. *Giarratano*, 521 F.3d at 305. If Plaintiff wishes to argue the statements are not false, he may do so in a dispositive motion following discovery.

Third, after arguing that Manatron asserts no specific examples of false statements, Plaintiff then bizarrely contradicts himself, arguing that the false statements alleged by Manatron (that he previously denied existed) were actually opinions, not false statements. (Pl. Mem. at 3 ("These statements furthermore would be considered by the reader as opinions and therefore not

---

[4] *See Jack's Cookie Co. v. Brooks*, 227 F.2d 935 (4th Cir. 1955), as but one example among many of plaintiffs simultaneously asserting claims for libel and breach of contract.

defamation.").)  Once again, Plaintiff may wish to argue that the false statements as alleged by Manatron are mere opinion.  Like the argument that such statements are untrue, however, Plaintiff's argument is premature.  Manatron has alleged that these statements are false statements made to customers of Manatron to purposely damage Manatron's business and reputation.  This Court must therefore treat Manatron's allegations as true.  Plaintiff is free to argue the false statements are opinion in a dispositive motion after discovery has been conducted.

Finally, Plaintiff argues Manatron fails to specifically allege "any pecuniary loss and therefore would be unable to recover damages."  (Pl. Mem. at 3.)  First, "pecuniary loss" is not a required element of Manatron's libel *per se* claim.  Under North Carolina law a claim of libel *per se* does not require a plaintiff to plead special damages, as damages are presumed.  "Libel [p]er se is actionable without proof of actual damages because malice and injury are presumed." *Matthews, Cremins, McLean, Inc. v. Nichter*, 256 S.E.2d 261, 263 (N.C. Ct. App. 1979).  *See also Stewart v. Check Corp.*, 182 S.E.2d 410 (N.C. 1971); *Badame v. Lampke*, 89 S.E.2d 466 (N.C. 1955).

With regard to Manatron's claim for libel *per quod*, once again, a review of Manatron's Counterclaim allegations demonstrates that Plaintiff's argument is false.  Manatron specifically pleaded damages "[a]s a proximate result of Plaintiff's commission of libel *per se* or, in the alternative, libel *per quod*. . . ."  (Counterclaims ¶ 123.)  Manatron further pleaded entitlement to special damages as a result of Plaintiff's libelous statements: "In addition, [Manatron] has suffered specific damages and losses arising from Plaintiff's harm to Defendant's current and prospective business contracts as well as ongoing and lasting injury to [Manatron's] business reputation and business relationships."  (*Id*. ¶ 124.)  Specific examples of this "special damage"

are alleged in numerous paragraphs of Manatron's Counterclaims. (*See, e.g.*, *Id.* ¶¶ 41, 48, 52-55, 64-66, 77, 94, 98, 105.)

### 2. Manatron's Claim for Breach of Contract States a Claim Upon Which Relief Can be Granted

In support of his motion to dismiss Manatron's claim for breach of contract pursuant to Rule 12(b)(6), Plaintiff argues Manatron's claim fails for the following reasons:

(1)    Plaintiff was not aware of the information alleged as the basis for breach of contract claim when Plaintiff left employment with Manatron;

(2)    Manatron fails to allege damages occurred as a result of Plaintiff's actions;

(3)    Manatron's customers are not third parties;

(4)    the contracts at issue were "public records," and thus not confidential;

(5)    Manatron fails to specifically plead elements of the claim;

(6)    a portion of the basis of Manatron's claim is based on information available to public;

(7)    Manatron fails to allege that the Youtube.com video clips discuss error messages; and

(8)    Plaintiff did not possess information concerning Manatron's staffing in Minnesota.

Once again, each of Plaintiff's arguments is without merit. First, Plaintiff's argument that dismissal of Manatron's breach of contract claim is required because Plaintiff's employment with Manatron terminated "several months" prior to the statements made by Plaintiff which form the basis of Manatron's breach of contract claim is irrelevant.[5] Plaintiff must take the allegations of Manatron's Counterclaims as true, and Manatron has alleged that Plaintiff, while employed by Manatron, gained knowledge of the confidential information he later divulged to third parties following his termination. (Counterclaims ¶¶ 18, 20, 34, 46, 64-65, 67, 99-100, 131.) Thus, whether there was some delay between Plaintiff's termination and his divulging of what Manatron alleges is confidential and proprietary information to third parties in violation of the

---

[5] Plaintiff also characterizes his knowledge as "stale" or "expired," though Plaintiff fails to logically argue how confidential and proprietary information learned while employed 'expires' after the passage of a "few months," nor can Plaintiff dispute the fact that the Nondisclosure Agreement contains no exception for "stale" or "expired" information.

Nondisclosure Agreement (Ex. 1 to Manatron's Counterclaims) is simply irrelevant and cannot constitute grounds for a motion to dismiss. If Plaintiff wishes to argue that he did not have access to, and thus could not have known, the information forming the basis of Manatron's breach of contract claim, he is free to do so in a dispositive motion following discovery.

Second, Plaintiff argues Manatron failed to allege damages as required to assert a breach of contract claim. (Pl. Mem. at 4.) Plaintiff's argument is, once again, demonstrably false. Manatron's Counterclaims repeatedly allege damages resulting from Plaintiff's breach of the Nondisclosure Agreement. (Counterclaims ¶¶ 18, 20-21, 35-36, 64-66, 133.)

Third, Plaintiff argues that Manatron's customers are not "third parties," and thus the Nondisclosure Agreement does not apply to information disclosed to customers. (Pl. Mem. at 4.) Manatron is unaware of the basis of Plaintiff's claim that its customers are not third parties. While Plaintiff argues that the information he disclosed to Manatron's customers was already known to them, Plaintiff must take Manatron's Counterclaims as true. Manatron's Counterclaims allege that the information was confidential and proprietary and subject to the Nondisclosure Agreement. (Counterclaims ¶¶ 18, 20, 34, 46, 64-65, 67, 99-100, 131.)

Fourth, Plaintiff argues that "any staffing levels that would affect a particular customer would be known to that customer as part of the contract between the customer and Manatron and such contracts are public records because the customers are governments." (Pl. Mem. at 4.) Plaintiff tellingly cites no authority for the proposition that any contract entered into by any county in any state is automatically a public record and thus cannot form the basis of Manatron's breach of contract claim. More importantly, whether or not the contract between Manatron and its customers is a public document is irrelevant to Manatron's claims against Plaintiff. Manatron's breach of contract claims concern confidential and proprietary information learned

by Plaintiff while he was employed by Manatron and disclosed to customers by Plaintiff following his termination *in violation of the Nondisclosure Agreement* – not any contract between Manatron and its customers. Thus, whether the contract between the customer and Manatron is considered a public record is irrelevant.

Fifth, Plaintiff argues Manatron's breach of contract claim fails because Manatron did not specifically plead any "actual events" supporting such claim. (Pl. Mem. at 5.)[6] Specifically, Plaintiff alleges paragraph 46 of Manatron's Counterclaims fails to state a claim because it contains the word "may" in its allegation. (*Id*.) Contrary to Plaintiff's argument, Manatron repeatedly alleges specific, "actual events" forming the basis of its breach of contract claim. (Counterclaims ¶¶ 18, 20, 34, 46, 64-65, 67, 99-100, 131.) In most cases, Manatron attaches as an exhibit to its Counterclaims a copy of the subject communication. Plaintiff further argues Manatron fails to "allege any material breaches of contracts." This argument fails on its face, as Manatron explicitly alleged "Plaintiff's breach of the Noncompete and Nondisclosure Agreement was a material breach . . . ." (Counterclaims ¶ 132.)

Furthermore, the use of the word "may" in one allegation does not require dismissal of Manatron's breach of contract claim, as a plaintiff cannot be expected to know each and every fact at the initial stage of pleading without the benefit of any discovery. Manatron's allegations certainly constitute "enough fact to raise a reasonable expectation that discovery *will* reveal evidence of [the cause of action]." *Twombly*, 550 U.S. at 556 (emphasis added). If Plaintiff is correct and plaintiffs are only allowed to assert claims based on information known to them, then claims of defamation or breach of a non-disclosure agreement as a result of statements made outside a plaintiff's presence to a third-party could never be brought, as the plaintiff would not

---

[6] Plaintiff further alleges that Manatron failed to allege the facts supporting its breach of contract claim. (Pl. Mem. at 7.) Because this argument is, for all practical purposes, identical to the argument that Manatron failed to allege "actual events," it will not be separately discussed.

8

have personal information of the contents of the statement at the initial pleading stage and could not survive a Rule 12(b)(6) motion to dismiss, thus losing the opportunity to conduct discovery as to the specific content of the disclosures. Such a result is not in keeping with the liberal nature of Rule 8, *Twombly*, or recognized practices of pleading. Manatron has alleged that Plaintiff may have disclosed confidential and proprietary information to Ms. Steele-Coles in violation of the Nondisclosure Agreement, and Manatron should be allowed to conduct discovery as to the contents of Plaintiff's disclosures. If, after discovery, Plaintiff can demonstrate through admissible evidence that Manatron is wrong and no violation of the Nondisclosure Agreement occurred, Plaintiff is free to move the Court for appropriate relief at that time.

Sixth, Plaintiff argues that a portion of Manatron's breach of contract claim must be dismissed because the information forming the basis of the claim is available to the public. (Pl. Mem. at 5.) In support of this argument, Plaintiff alleges that the "security message" to which he complained to Mecklenburg County was also experienced "by all users of the programs [and] by the public . . . ." (*Id.*)[7] While members of the public might experience the error message, Plaintiff is no ordinary member of the public.[8] Plaintiff was a former employee of Manatron with intimate knowledge of the technical aspects of Manatron's software and how Manatron client Mecklenburg County used the software. Moreover, in the e-mail correspondence between Plaintiff and counsel for Manatron and representatives of Mecklenburg County, Plaintiff demonstrates his intimate knowledge with the security warning issue. Plaintiff repeatedly refers

---

[7] This allegation is not contained in Manatron's Counterclaims, and should therefore not be considered by the Court on Plaintiff's Rule 12(b)(6) motion to dismiss. *See CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (holding that, pursuant to the "Four Corners" rule, "the Fourth Circuit has held that courts may consider the complaint itself and any documents that are attached to it."). In case the Court decides to consider factual arguments submitted by Plaintiff which are not contained in the "four corners" of Manatron's Counterclaims, however, Manatron will briefly respond to the substance of Plaintiff's argument.

[8] Ordinary members of the public would likely not know whether the error message at issue was the alleged result of Manatron's software, or some other technical issue. Ordinary members of the public would just see that an error occurred.

to a security warning issue that has been ongoing for two years – a time period during which Plaintiff worked for Manatron and dealt directly with this issue.[9] Thus, Plaintiff's repeated reference to a problem for which he was directly responsible during the time he worked for Manatron to the very client on whose account Plaintiff worked is not the equivalent of a complaint made by the general public. It directly concerns confidential and proprietary information Plaintiff learned while employed by Manatron which Plaintiff chose to disclose to a Manatron customer. Plaintiff used his intimate knowledge of Manatron software and Manatron's client to cause the error to happen and then report the error to the client in order to put Manatron in a poor light and cause problems with Manatron's client.

Seventh, Plaintiff argues Manatron fails to allege that the Youtube.com video clips created and posted by Plaintiff discuss the security warning issue. Plaintiff is confused as to Manatron's allegations. Manatron is not alleging that Plaintiff *will* breach the Nondisclosure Agreement in the future *if* he creates and posts a video on Youtube.com concerning the security message 'pop-up'. Instead, Manatron alleges that Plaintiff breached the Nondisclosure Agreement by disclosing confidential information *both* in the Youtube.com video clip entitled "Manatron Operated Website Errors at 4 am" *and* in communications with Mecklenburg County officials regarding the security message 'pop up'. (Counterclaims ¶¶ 28-29, 80-87, Ex. 13.)

Eighth, Plaintiff argues Manatron's breach of contract claim fails because Plaintiff did not possess information concerning Manatron's staffing in Minnesota. Plaintiff made the following statement to a representative of Hubbard County, Minnesota, a Manatron customer: "The[ir] (sic) staffing is messed up in some fashion or there wouldn't be this many problems." (Counterclaims

---

[9] This e-mail correspondence is incorporated into Manatron's Counterclaims and attached as Exhibit 13 thereto. Thus, pursuant to Fed. R. Civ. P. 10(c), the e-mail "is a part" of Manatron's Counterclaims. Therefore, pursuant to the "Four Corners" rule, the e-mail and all other attachments to Manatron's Counterclaims may be considered by the Court in deciding Plaintiff's Rule 12(b)(6) motion to dismiss.

¶ 99.)  As Manatron explains in paragraph 100, the only way Plaintiff would know of any issue with Manatron staffing is based on his experience as an employee.  "[A]ny knowledge Plaintiff has regarding the internal staffing of Manatron is based upon confidential and proprietary information Plaintiff acquired during his employment."  (*Id*. ¶ 100.)  Plaintiff now argues that he didn't possess any information concerning Manatron's staffing in Minnesota.  Once again, Plaintiff's factual argument is premature.  Manatron has alleged he *did* know such information, and Plaintiff is forced to take Manatron's allegations as true.  If Plaintiff can produce evidence demonstrating that he had no knowledge of staffing issues in Minnesota (even though the e-mail Manatron attaches to its Counterclaims as Exhibit 16 explicitly references an affirmative knowledge of staffing issues: "The[ir] staffing is messed up . . ."), then Plaintiff is free to make such argument in a dispositive motion following Manatron's opportunity to conduct discovery.

Finally, Plaintiff makes a miscellaneous argument concerning Manatron's failure to demonstrate a likelihood of success on the merits.  Manatron has not yet moved for a preliminary injunction. Thus, Plaintiff's "likelihood of success" argument is premature at best.

### 3. Manatron's Claim for Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*, States a Claim Upon Which Relief Can be Granted

With regard to Plaintiff's motion to dismiss Manatron's claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq*., pursuant to Rule 12(b)(6), Plaintiff argues Manatron's UDTPA claim fails because:

(1)  Manatron failed plead the essential elements;

(2)  Plaintiff is not involved in trade or commerce, Manatron's customers are "governments," not "consumers," and UDTPA is inapplicable to incidents occurring outside of "trade" in North Carolina; and

(3)  Manatron fails to allege actual damages.

First, Plaintiff argues Manatron failed to allege the essential elements of a UDTPA claim. (Pl. Mem. at 7-8.) Yet again, Plaintiff is demonstrably incorrect. Manatron alleged each and every element of a UDTPA claim. (*See* Counterclaims ¶¶ 135-141.) Plaintiff specifically argues that Manatron's Counterclaims "lack[] factual allegations to meet the pleading requirements" of a UDTPA claim, specifically including "facts demonstrating that [Plaintiff] committed an unfair or deceptive trade act or practice" and "proximate causation." (Pl. Mem. at 8.) Contrary to Plaintiff's conclusory assertion, the vast majority of the paragraphs in Manatron's Counterclaims concern an allegation of Plaintiff's unfair and deceptive trade practices. (*See*, *e.g.*, Counterclaims ¶¶ 18-141.) Further, Manatron specifically alleges these unfair and deceptive trade practices proximately caused damages to Manatron. (*Id*. ¶¶ 139-141.) Finally, while Plaintiff may attempt to assert that his actions "are not unfair as a matter of law," for purposes of his motion to dismiss Plaintiff must take Manatron's allegations as true. Because Manatron has alleged that his actions constitute unfair and deceptive trade practices, Plaintiff must wait for dispositive motions to argue that, factually, his actions were not unfair or deceptive.

Second, Plaintiff argues the UDTPA is inapplicable because he is not involved in trade or commerce, Manatron's customers are "governments," not "consumers," and the incidents alleged did not take place in "trade" in North Carolina. (Pl. Mem. at 8.) Plaintiff misunderstands the UDTPA's application. To assert a violation of the UDTPA, a plaintiff need only show that the alleged actions "affect[] commerce," (N.C. Gen. Stat. § 75-1.1(a)), not that the defendant is "involved" in commerce. (Pl. Mem. at 8.) Clearly, the allegations as set forth in Manatron's Counterclaims are sufficient to "affect[] commerce."[10] *See Prince v. Wright*, 541 S.E.2d 191,

---

[10] Manatron's Counterclaims allege that Plaintiff systematically targeted Manatron's customers with defamatory statements and confidential information in an effort to purposely damage Manatron's business by causing Manatron's customers to stop doing business with Manatron. These allegations fall squarely within the broadly defined definition of "commerce" as set forth in the UDTPA.

197 (N.C. Ct. App. 2000) ("'Commerce' in its broadest sense comprehends intercourse for the purpose of trade in any form," and "includes all business activities, however denominated.") (internal citations omitted). Moreover, whether Manatron's customers are "governments" or "consumers" is irrelevant as to Manatron's claims. Finally, despite Plaintiff's assertion that Manatron's Counterclaims do not allege "any specific incidents to have occurred in North Carolina trade," each of Manatron's allegations is asserted on behalf of a company doing business in North Carolina against a North Carolina resident. (Counterclaims ¶ 2.)

Third, Plaintiff argues Manatron failed to allege actual damages. (Pl. Mem. at 9.) Yet again, a simple review of Manatron's Counterclaims refutes Plaintiff's argument. (*See, e.g.*, Counterclaims ¶¶ 41, 48, 52-55, 64-66, 77, 94, 98, 105, 139-141.)[11]

### 4.    Manatron's Claim for Punitive Damages

With regard to Plaintiff's motion to dismiss Manatron's claim for punitive damages pursuant to Rule 12(b)(6), Plaintiff argues that Manatron's claim for punitive damages fails to state a claim because punitive damages are not recoverable for a claim of libel due to the Right to Petition and the *Noerr-Pennington* Doctrine.[12] Plaintiff is legally incorrect. Punitive damages are recoverable in claims of libel. *United Labs., Inc. v. Kuykendall*, 437 S.E.2d 374 (N.C. 1993) (holding a plaintiff is not required to elect between punitive damages awarded for libel claim and treble damages awarded pursuant to UDTPA claim).

### 5.    Manatron's Claim for Injunctive Relief

Plaintiff further argues that all of Manatron's claims, including the claim for injunctive relief, should be dismissed pursuant to the Bill of Rights, the Right to Petition guaranteed by the

---

[11] *See* footnote 3, *supra.*

[12] *See* footnote 3, *supra.*

First Amendment of the U.S. Constitution, the *Noerr-Pennington* Doctrine and the Oath of Office required of elected officials in North Carolina.[13]   Plaintiff cites a farcical parade of horribles that would result if Manatron's claim for injunctive relief is granted.

> Preventing [Plaintiff] from contacting more than 1,500 state and local governments that are current customers and any future customers would prevent [Plaintiff] from registering to vote, applying for a marriage license, obtaining a library card, registering a deed, become a notary, obtain a birth certificate for his children, draw water from a municipal source, pay property taxes, petition county commissioners, run for elected office and other functions of living in a functioning democracy.

(Pl. Mem. at 11.)  Plaintiff then absurdly argues that any injunction would require him to "move from his current home and be restricted from living in government districts that are Manatron customers.  Manatron could in effect force [Plaintiff] to continue to relocate simply by answering an R.F.P. from a government agency thus making that government a 'prospective customer'." (*Id.*)

Should Manatron move the Court for injunctive relief, no such absurd result will occur. In the Counterclaims, Manatron seeks only that this Court enter an injunction prohibiting Plaintiff from contacting its customers to disparage or harm its business or reputation.  If Plaintiff in good faith believes Manatron's requested injunction could prevent him from taking advantage of his most basic civil liberties, to the point where he would become a refugee, then Manatron trusts this Court is capable of fashioning an injunction which would prevent Plaintiff from defaming and unfairly or deceptively competing with Manatron without impeding Plaintiff's most basic rights.

---

[13]  *See* footnote 3, *supra*.

### C. Plaintiff's Motion to Dismiss Pursuant to Rule 8(a)(2)

With regard to Plaintiff's motion to dismiss Manatron's claims pursuant to Rule 8(a)(2), Plaintiff argues:

(1) Plaintiff's acts and statements were made in a desperate attempt to "meet and confer" with counsel for Manatron as to allegations, damages, etc.;

(2) Manatron's cease and desist letter was not specific enough to provide Plaintiff with information as to libel, damages suffered by Manatron, etc.;

(3) Manatron's Counterclaims are deficient under Rule 8(a)(2) because Manatron asserts "possible," not "probable" acts, statements and wrongdoing;

(4) Manatron's Counterclaims are deficient because Manatron relies on the term of art "upon information and belief" in asserting its allegations;

(5) Manatron's Counterclaims are deficient because they concern publicly available information; and

(6) Manatron's Counterclaims do not rise to the level required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

First, Plaintiff's assertion that his actions in communicating with counsel for Manatron were made in a "desperate" attempt to meet and confer is patently absurd. As a cursory review of the communications will reveal, Plaintiff repeatedly taunts, threatens, and antagonizes Manatron in his communications with Manatron's counsel. Counsel for Manatron have never engaged Plaintiff in settlement discussions, and no privilege, doctrine, or protection bars Manatron from submitting communications made by Plaintiff to Manatron's counsel in support of its claims. Plaintiff voluntarily chose to make the statements contained in those communications. He cannot now attempt to hide behind a "meet and confer" requirement to keep those communications from the Court's consideration.

Second, for purposes of Plaintiff's motion to dismiss, the contents of the cease and desist letter are irrelevant.

Third, Manatron has properly pled each of its allegations against Plaintiff as discussed *ad nauseum* above. Manatron hardly asserts "possible" wrongdoing; in fact, Manatron attaches 19 exhibits to substantiate its claims.

Fourth, dismissal of Manatron's claims is not warranted due to the occasional use of the term of art "upon information and belief" in Manatron's Counterclaims. Manatron has properly pleaded each of the essential elements, as well as factual support for each element, that is required by Rule 8. What is alleged upon information and belief was believed to be true as of the filing of the Complaint. Manatron now deserves the chance to probe the full extent of its allegations during discovery.

Fifth, as Manatron has discussed in detail, *supra*, Plaintiff is simply incorrect if he argues that each and every aspect of Manatron's Counterclaims is "public" simply because Manatron's customers are governmental entities.

Sixth, Manatron's claims satisfy the pleading requirements of both *Twombly* and *Iqbal*. Manatron has clearly asserted "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the cause of action]." *Twombly*, 550 U.S. at 556.

D.     **Right to Petition of the First Amendment of the U.S. Constitution and the** *Noerr-Pennington* **Doctrine**

Plaintiff argues at some length that each of Manatron's claims are barred by the immunity provided by the Right to Petition of the First Amendment of the U.S. Constitution and the *Noerr-Pennington* Doctrine. (Pl. Mem. at 12-14.)

1.     **The** *Noerr-Pennington* **Doctrine**

The *Noerr-Pennington* Doctrine grants First Amendment immunity to those who engage in "petitioning activity". *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961). The *Noerr-Pennington* Doctrine has its foundations in the First Amendment right to petition the government for a redress of grievances. *See Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 131 n.13 (3d Cir. 2005) (citing U.S. CONST. amend. I). "The policies behind

the *Noerr-Pennington* doctrine include preserving an individual's first amendment right to petition government officials and encouraging the free flow of ideas to political bodies in order to ensure intelligent decisionmaking." *Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*, 756 F.2d 986, 993 (4th Cir. 1985). Accordingly, in order for the doctrine to apply there must be some sort of valid "petitioning activity." *Hill v. Borough of Kutztown*, 455 F.3d 225, 243 (3d. Cir. 2006) ("We further hold that [Defendant] is not entitled to petitioning immunity under the *Noerr-Pennington* doctrine because the conduct with which he is charged cannot be construed as 'petitioning activity' under any reasonable interpretation of that term.").

Petitioning activity includes litigation, and further "extends beyond attempts to influence the passage and enforcement of laws and applies equally to efforts to influence administrative agency action, and efforts to access the court system." *Santana Prods.*, 401 F.3d at 131 n.13 (internal citations omitted). The concept of "petitioning activity," however, "cannot be given a meaning that would provide more extensive protection to petitioning activity than would the First Amendment." *Municipal Revenue Service, Inc. v. Xspand, Inc.*, No. 4:05-cv-671, 2010 WL 1233991, at *3 (M.D.Pa. Mar. 31, 2010) (citing *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 327 (3d Cir.1999)) (attached hereto).

The Fourth Circuit, moreover, has made clear that the *Noerr-Pennington* Doctrine is not limitless. "Not every concerted effort to influence government action is immune under *Noerr-Pennington*. The scope of this immunity depends on the source, context, and nature of the anticompetitive restraint at issue." *A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183, 191 (4th Cir. 2002) (citing *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988)). For example, "[u]nethical and deceptive practices can constitute abuses

of administrative or judicial process that may result in" an exception to *Noerr-Pennington*. *Id.* (citing *Allied Tube*, 486 U.S. at 500).[14]

### 2. The "Sham" Exception to the *Noerr-Pennington* Doctrine

The Fourth Circuit has further recognized a specific exception to the doctrine: the "sham" exception. *Fisherman's Best*, 310 F.3d at 191-94; *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 399 (4th Cir. 2001). Under the sham exception, *Noerr-Pennington* does not apply to petitions that are a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144. "A classic example [of a sham] is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Fisherman's Best*, 310 F.3d at 191 (citing C*ity of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991)). As the Fourth Circuit explained: "The essential element of the sham exception is <u>intent to injure a competitor coupled with the absence of a genuine effort to influence the government.</u>" *Id.* (emphasis added).

### 3. Plaintiff's Communications with Manatron Customers are Not Protected Pursuant to the *Noerr-Pennington* Doctrine

In the case at bar, Plaintiff argues that his communications with Manatron customers were efforts to "petition" the government and Manatron's claims are thus barred by *Noerr-Pennington*. Plaintiff is mistaken, however, as his efforts cannot be considered "petitioning activity." Further, even if Plaintiff did engage in "petitioning activity," his actions would fall under the sham exception to *Noerr-Pennington*.

---

[14] Plaintiff cites two decisions from courts within the Ninth Circuit, *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (D.Cal. 1996) and *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th Cir. 1998), in support of a broad application of the doctrine. While the Fourth Circuit has recognized the doctrine's application outside the original antitrust case law, the Ninth Circuit has interpreted and applied the doctrine much more broadly than has the Fourth Circuit.

a. **Plaintiff's Communications with Manatron Customers are Not "Petitioning Activity," and Therefore Not Protected Pursuant to the *Noerr-Pennington* Doctrine**

In communicating with Manatron's governmental customers, Plaintiff's purpose was not to petition any governmental body. For example, in Plaintiff's September 23, 2009 e-mail correspondence with Jennifer Leggett Whitehurst (Counterclaims ¶¶ 30-33, Ex. 2), Plaintiff submitted a public records request for all e-mails exchanged between Ms. Whitehurst and Manatron for a period of two years. (*Id.*) Plaintiff, however, couldn't resist adding: "I don't know what the status of Manatron staffing is now for field support but I fear it's mostly still Darryl with Wade as a backup. They keep selling the product but they need to add staff. They've had a terrible year in the press with all kinds of nastiness in several states." (*Id.*) This unsolicited disclosure of confidential and proprietary staffing information of Manatron, which forms the basis of one portion of Manatron's breach of contract claim, was not related to Plaintiff's public records request or any other alleged governmental "petition."

Similarly, in Plaintiff's October 12, 2009 e-mail to Ms. Whitehurst (Counterclaims ¶¶ 35-36, Ex. 3), Plaintiff sends an unsolicited link to the Youtube video he created entitled "Manatron Manager Tells Sick Employee to Get His Ass to Work." This correspondence cannot conceivably be construed as "petitioning activity." Plaintiff never petitions for anything.

Plaintiff's October 15, 2009 e-mail, sent to twenty-six individuals and entitled "Hitching your Future to Manatron" (Counterclaims ¶¶ 37-41, Ex. 4), begins not as a petition but rather as a list of allegations against Manatron: "I am an ex-Manatron employee formally assigned full time to Mecklenburg County NC Register of Deeds. You may consider me disgruntled if you like but that does not change the facts that I outline below." (*Id.*) Plaintiff then continues his

communication not with the intention of petitioning any government, but instead to bash Manatron relentlessly thereby hurting its relationships with its potential customers.

Plaintiff's November 16, 2009 e-mail to Tom Murtagh (Counterclaims ¶¶ 47-49, Ex. 5) similarly lacks any petition of the government of Tippecanoe County, Indiana. In fact, Manatron is at a loss as to what relief a resident of Mecklenburg County, North Carolina could seek in the form of a petition to Tippecanoe County, Indiana. What is clear, however, is Plaintiff's correspondence with Mr. Murtagh is yet another example of defamatory statements made to harass and cause damage to Manatron, not a petition for any type of redress.

This pattern continues with each successive correspondence with Manatron's customers. (*See*, *e.g.*, Counterclaims ¶¶ 52-54, 61-72, 77-78, 80-83, 94-105, and Exs. 6, 8, 11-13, 16.) In each of these communications, Plaintiff's purpose is not to petition the government for redress. Plaintiff is simply writing defamatory statements and disclosing confidential, proprietary information to Manatron customers who also happen to be governmental entities. Plaintiff now seeks to hide behind *Noerr-Pennington* to insulate his wrongful actions from liability. The Fourth Circuit has not stretched *Noerr-Pennington* to such broad application. Furthermore, if Plaintiff's interpretation of *Noerr-Pennington* is correct, any defendant who made a defamatory statement to any governmental official would be immune from liability. Neither the *Noerr-Pennington* Doctrine nor the First Amendment guarantees such protection.

In *McDonald v. Smith*, 472 U.S. 479 (1985), plaintiff alleged that the defendant libeled him by writing letters containing allegedly false, slanderous, and derogatory statements, to then-President Reagan concerning the plaintiff's possible appointment as United States Attorney for North Carolina. *Id.* at 480-81. The defendant argued that the First Amendment's petition clause gave him absolute immunity from liability. *Id.* at 481-82. The Court rejected defendant's

argument, noting that while "the values in the right of petition as an important aspect of self-government are beyond question, it does not follow that the Framers of the First Amendment believed that the Petition Clause provided absolute immunity from damages for libel." *Id*. at 483. The Court explained:

> [t]o accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble.... These First Amendment rights are inseparable, ... and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.

> Under state common law, damages may be recovered only if petitioner is shown to have acted with malice; "malice" has been defined by the Court of Appeals of North Carolina, in terms that court considered consistent with *New York Times Co. v. Sullivan*, 376 U.S. 254[ ] (1964), as "knowledge at the time that the words are false, or ... without probable cause or without checking for truth by the means at hand." ... We hold that the Petition Clause does not require the State to expand this privilege into an absolute one. The right to petition is guaranteed; the right to commit libel with impunity is not.

*Id*. at 485 (internal citations omitted). Like the defendant in *McDonald*, Plaintiff's libelous statements are not protected by absolute immunity.

### b. Plaintiff's Communications With Manatron Customers Fall Within the "Sham" Exception to *Noerr-Pennington* Doctrine

Even if Plaintiff can demonstrate that his communications were some form of governmental "petitioning," Plaintiff's actions and communications fall squarely within the sham exception to *Noerr-Pennington*. Plaintiff's actions and communications are "nothing more than an attempt to interfere directly with the business relationships" of Manatron. *Noerr*, 365 U.S. at 144. Plaintiff's communications demonstrate both essential requirements of the sham exception.

Plaintiff's intent to injure Manatron is obvious, and simultaneously Plaintiff made no genuine effort to influence the government.

The Middle District of Pennsylvania recently decided a factually similar scenario. In *Xspand*, plaintiff MRS "was in the business of purchasing delinquent tax liens from municipalities and school districts in the Commonwealth of Pennsylvania." 2010 WL 1233991, at *2. MRS alleged that its competitor, Xspand "disseminated misinformation regarding the nature of its services, in that Xspand has, *inter alia*, informed potential MRS customers that MRS-facilitated transactions produced debt, not revenue, for the taxing entity." *Id.* "MRS alleges that Xspand's conduct has caused it to lose a substantial part of its business in the form of both current and prospective customers." *Id.*

On summary judgment, Xspand argued MRS's claims for, among other things, unfair competition and defamation, were barred by the *Noerr-Pennington* Doctrine. *Id.* Xspand argued that its marketing efforts were an act of petition; specifically, petitioning the government to enter into business agreements with it. *Id.* at *3. MRS, on the other hand, argued "that Xspand's marketing efforts 'disparage or otherwise seek to disrupt Plaintiff's business,' . . . and that 'Defendants' misconduct was not for any legitimate purpose, but to prevent Plaintiff from properly and lawfully promoting, marketing, and competing in the marketplace. . . .'" *Id.* The court agreed with MRS, holding that the alleged "petitioning activity," if it even was such, was designed not to compete with MRS but to harass it; a purpose squarely within the confines of the sham exception to the *Noerr-Pennington* Doctrine:

> In the case at bar, the "petitioning activity" in question involves the distribution of information by Xspand comparing MRS-facilitated transactions to Xspand-facilitated transactions in an apparent attempt to persuade governmental entities to chose Xspand's services over MRS' services. . . MRS maintains that the information distributed by Xspand misrepresented that MRS-

> facilitated transactions produce debt, not revenue, for a governmental entity and could have a negative impact on the entity's credit rating. Even if this conduct qualified as "petitioning activity" for purposes of the *Noerr Pennington* Doctrine, a conclusion that we do not expressly reach, application of that doctrine in the case at bar would be precluded by operation of the "sham exception."

*Id.* A review of Xspand's communications – communications which are not even as egregiously defamatory as the case at bar – led the court to conclude "that Xspand's conduct was primarily tailored to disrupt MRS' business rather than directly designed to garner favorable government action for itself." *Id.* at 4.

Like Xspand, Plaintiff set out on a systematic plan to distribute misinformation to Manatron's customers in an attempt not to "garner favorable government action for" himself, but instead to disrupt and harass Manatron's business. Like *Xspand*, the *Noerr-Pennington* doctrine is inapplicable here. Plaintiff's communications are not "petitioning activities" protected by *Noerr-Pennington* Doctrine. Even if they are considered "petitioning activities," Plaintiff's communications are precisely the type that the sham exception was created to exclude.

### E. Plaintiff's Motion to Strike

Plaintiff argues paragraphs 56, 57, 58, 67, 68, 69, 70, 71, 72, 73, 74, 88, 89, 106, 107, 108, 110, 111, and 112 of Manatron's Counterclaims should be stricken because each is "not related to any of [Manatron's] claims, are communications to [Manatron's] counsel as part of meet and confer, are included purely to harass and stymie Kudasz by adding time and expense to respond, and to puff up counter-complaint that would be nearly naked without them." (Pl. Mot. at 2.)

Rule 12(f) of the Federal Rules of Civil Procedure states, in pertinent part, that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  The referenced paragraphs of Manatron's Counterclaims are not "an insufficient defense or … redundant, immaterial, impertinent, or scandalous. . ."  Fed. R. Civ. P. 12(f).  Plaintiff's allegation that such paragraphs are "not relevant," does not satisfy the requirements of Rule 12(f).  Further, as discussed above, Plaintiff's communications were not made in any attempt to "meet and confer," or in any good faith discussion as to the settlement of this matter, and are thus not protected by any protection, doctrine, or privilege.  Plaintiff's argument that the referenced paragraphs are asserted only to add time and expense to Plaintiff's reply is without merit.  The allegations are asserted to provide both the Court and any fact-finder with sufficient factual background information to place Manatron's claim in proper perspective. Finally, Plaintiff's argument that the referenced paragraphs are asserted only to "puff up" an otherwise "nearly naked" set of allegations is both incorrect and, most importantly, irrelevant. Manatron is free to allege facts in support of its claims as long as it does not allege "an insufficient defense or . . . redundant, immaterial, impertinent, or scandalous matter[s]."

### III.  CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Dismiss and or to Strike should be denied in its entirety.

Dated this the 10th day of June, 2010.

Respectfully submitted,

s/H. Bernard Tisdale III
NC Bar No. 23980
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:  bernard.tisdale@ogletreedeakins.com

s/John A. Shedden
NC Bar No. 38499
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704.342.2588
Facsimile: 704.342.4379
Email: john.shedden@ogletreedeakins.com

## CERTIFICATE OF SERVICE

I, H. Bernard Tisdale, hereby certify that I have this day electronically filed the foregoing

**DEFENDANT MANATRON INC.'S RESPONSE TO PLAINTIFF'S MOTION TO**

**DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of the

filing to the following person:

Gregory J. Kudasz
*Pro Se Plaintiff*
3611 Mount Holly Huntersville RD
STE 204 Box 386
Charlotte, NC 28216-8706
Email: greg@title11.org

Dated this the 10th day of June, 2010.

s/H. Bernard Tisdale III
NC Bar No. 23980
*Attorney for Defendants*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704.342.2588
Facsimile: 704.342.4379
Email: bernard.tisdale@ogletreedeakins.com