Gregory J. Kudasz *pro per*
3611 Mount Holly Huntersville RD
STE 204 Box 386
Charlotte, NC 28216-8706
Telephone: (980) 522-8210
Fax: (866) 473-4583
E-Mail: greg@title11.org

RECEIVED
CHARLOTTE, N.C.
JUN 16 2010
Clerk, U.S. Dist. Court
W. Dist. of N.C.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL NO. 3:10CV106-RLV-DSC

| | |
|---|---|
| GREGORY J. KUDASZ,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>MANATRON INC.,  )<br>GREGORY A. EFFREIN,  )<br>  )<br>Defendants.  )<br>  ) | **PLAINTIFF'S REPLY TO MANATRON'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM** |

COMES NOW, Plaintiff GREGORY J. KUDASZ ("Kudasz") and submits this reply to Defendant Manatron Inc. ("Manatron") response to Plaintiff's Motion to Dismiss.

## INTRODUCTION:

Defendant raises several alleged defects in Plaintiff's Motion to Dismiss including misinterpretation of legal doctrine, relying on extraneous facts not contained in Manatron's Counterclaims, or factual attacks on the allegations of Manatron's Counterclaims. Defendant states that the Counterclaims, "however, must be taken as true for purposes of Plaintiff's motion to dismiss. As a result, the vast majority of Plaintiff's arguments are premature and should be denied".

Defendant furthermore states that Plaintiff should have to wait and bear the burden of arguing the factual basis of Manatron's Counterclaims "in dispositive motions following discovery".

Plaintiff states however, that some of Defendant's claims, defenses, and other legal contentions are moving targets; true one moment, false the next, and that Defendant knows that some of their factual contentions have no evidentiary support or that Defendant is the sole possessor of evidentiary support for items that they deny, and the truth of the matter cannot change after opportunity for further investigation or discovery by the Plaintiff. Defendant's hiding behind their knowledge of these matters make their Counterclaim frivolous.

Furthermore, Plaintiff should not have to accept as true statements that are contradictory or inconsistent in Defendant's own pleadings.

Finally, Defendant raises exceptions to Plaintiff's legal doctrine interpretation including case law examples that supposedly prevent Plaintiff from relying on them at this stage of litigation.

Plaintiff will address these issues including why the doctrines stated are valid in series below.

For the reasons set forth herein, Plaintiff's motion should be granted.

## ARGUMENT

**Defendant's Claim: Libel cannot be asserted simultaneously with breach of contract;**

Defendant states in their response:

"Plaintiff does not – and cannot – cite any authority for the proposition that Manatron is prohibited as a matter of law from simultaneously asserting claims for libel and breach of contract."

Plaintiff does not maintain that Manatron is prohibited from asserting claims for libel and breach of contract in the same Counterclaim, rather Plaintiff states that the same *fact* cannot be both libelous and a breach of contract simultaneously. In order for a *fact* to be libel, it must be untrue. In order for it to be a breach of the confidentiality agreement it must be true. It cannot be both at the same time.

Most of Defendant's argument is regarding statements alleged to be made by Plaintiff to third parties regarding Manatron's staffing, for example "staffing is messed up in some fashion".

Defendant states in paragraph 100 of their Counterclaim that Plaintiff's statement is false and then in effect states that the false information was acquired during his employment. This is contradictory:

> "Such statements regarding Manatron's staffing are false. Further, any knowledge Plaintiff has regarding the internal staffing of Manatron is based upon confidential and proprietary information Plaintiff acquired during his employment. The sharing of such information is prohibited by the Nondisclosure Agreement."

**Libel claim fails to state a claim because Manatron fails to allege specific examples of "false statements;"**

Defendant States:

> "Plaintiff points to one example (among many) of Manatron's specific allegation of a false statement made by Plaintiff. (Pl. Mem. at 3 ("The only alleged example of a false statement at this point of the counterclaim is the statement 'slew of reported failures of new implementations, severe problems that affect constituents, and some very bad press.'" (quoting Counterclaims ¶ 40(c))).) Plaintiff attempts to explain away this "example" of a specific false statement alleged by Manatron by arguing that it is actually a true statement. Even if true, Plaintiff's argument is premature. For purposes of Plaintiff's motion to dismiss, Manatron has alleged that the statement is false: "In fact, Manatron has had fewer than five contracts terminated during the past five years, all of which were terminated for customer convenience reasons, not a failure by Manatron to meet contract requirements." (Counterclaims ¶ 40(c).) For purposes of Plaintiff's motion to dismiss, this Court must therefore treat Manatron's allegation as true. *Giarratano*, 521 F.3d at 305. If Plaintiff wishes to argue the statements are not false, he may do so in a dispositive motion following discovery."

The motion is not premature. Defendant bizarrely attaches a "slew" of examples of reported failures and bad press to their own Counterclaims. By doing so, Defendant establishes a *prima facie* case that Plaintiff's statements are true.

Plaintiff has not made any statement to any party regarding terminated contracts during the past five years regarding contract requirements and therefore should not be burdened by this oddly placed statement.

### Manatron's Claim for Breach of Contract States a Claim Upon Which Relief Can be Granted

Defendant States:

> "Plaintiff must take the allegations of Manatron's Counterclaims as true, and Manatron has alleged that Plaintiff, while employed by Manatron, gained knowledge of the confidential information he later divulged to third parties following his termination."

Plaintiff is not obligated to take a single statement as truthful that is in contradiction to Defendant's statements in totality when it is offered for an improper purpose. Defendant does not allege that Plaintiff broke into Manatron's Michigan headquarters to obtain data that he did not have access to as an employee. Manatron knows what confidential information Plaintiff was exposed to during his employment and defense council has a duty to probe for the facts before certifying filings to this court.

For example, Defendant denies the following in their answer to Plaintiff's complaint:

> 14. Kudasz had no contact with other line of business divisions within Manatron except for Records Management. Other business lines include tax assessment, billing and collection.

Defendant states in their Counterclaim:

> 17. On or about April 28, 2009, in light of the information Gephart acquired during her interviews of County employees and the fact that Plaintiff's *only* job

GREGORY J. KUDASZ VS. MANATRON INC., et; al., Case No: 3:10CV106-RLV-DSC

-4-

Case 3:10-cv-00106-RLV-DSC   Document 24   Filed 06/16/10   Page 4 of 17

was to service Manatron's contract with Mecklenburg County, Manatron
terminated Plaintiff's employment.: (internal emphases added)

95. Upon information and belief, Plaintiff *has no knowledge* of tax billing and
collection systems, Minnesota tax laws, or any of Manatron's Minnesota projects.
(Internal emphases added)

Defendant knows which business divisions inside Manatron Kudasz came into contact with, and how the records management division is located in a totally different division, and is managed in a different state than tax assessment, billing and collection. They also state that employee's *only* job was to serve Manatron's contract with Mecklenburg County, and that Plaintiff had no knowledge of the Minnesota projects. This makes the claim of having knowledge of staffing levels being acquired before his termination on projects that he had *no knowledge* of inconsistent. In order to accept the Counterclaim as true, Plaintiff (and the court) must accept that he had no knowledge of the staffing levels in regards to these projects and therefore could not breach the employment agreement by divulging them.

Furthermore, Defendant's council should be the one asking "did Kudasz have any contact with other divisions than Recording during his employ" since the answer to that question would negate Defendant's Counterclaim. Plaintiff should not have to bear the cost and time to ask this question during deposition since Plaintiff already knows the answer.

Defendant states:

> "Furthermore, the use of the word "may" in one allegation does not require
> dismissal of Manatron's breach of contract claim, as a plaintiff cannot be expected
> to know each and every fact at the initial stage of pleading without the benefit of
> any discovery."

Defendant does not need the benefit of discovery to prove their own statements about Plaintiff's knowledge of Minnesota projects or what divisions of Manatron's business units he was exposed to and thus what confidential information he could have been exposed to.

-5- GREGORY J. KUDASZ VS. MANATRON INC., et; al., Case No: 3:10CV106-RLV-DSC

Case 3:10-cv-00106-RLV-DSC   Document 24   Filed 06/16/10   Page 5 of 17

Defendant states:

> "Plaintiff's repeated reference to a problem for which he was *directly responsible* during the time he worked for Manatron to the very client on whose account Plaintiff worked is not the equivalent of a complaint made by the general public."

(Internal emphasis added)

Defendant puts forth a false statement to the court. Defendant knows that Plaintiff had no "intimate knowledge" of Manatron's website programming, and in fact never received training on any Manatron software whatsoever. Defendant knows that Plaintiff was not supplied with any technical or even end user documentation regarding Manatron software or website components including training or technical manuals. Plaintiff should not be forced to use discovery to prove he didn't magically become endowed with knowledge that was not provided to him by Defendant.

Defendant states:

> "Plaintiff used his intimate knowledge of Manatron software and Manatron's client to cause the error to happen and then report the error to the client in order to put Manatron in a poor light and cause problems with Manatron's client."

No consideration was given by Manatron to Plaintiff that would allow Defendant to hobble him from petitioning his government to fix an error that has been neglected for two years. The error message speaks for itself. It is designed to give heed to even the simplest user who would understand the source and cause of the error. No intimate knowledge of Manatron software is needed to infer this and in fact Manatron's client themselves complained about the problem. The complaint e-mail to Mecklenburg County includes a copy of the rendered message as displayed to all who view the website, and the client was acutely aware of the problem, therefore no breach of contract could occur regardless of Plaintiff's prior knowledge.

Defendant states:

> "Plaintiff argues Manatron's breach of contract claim fails because Plaintiff did not possess information concerning Manatron's staffing in Minnesota. Plaintiff made the following statement to a representative of Hubbard County, Minnesota, a Manatron customer: "The[ir] (sic) staffing is messed up in some fashion or there wouldn't be this many problems." As Manatron explains in paragraph 100, the only way Plaintiff would know of any issue with Manatron staffing is based on his experience as an employee. "[A]ny knowledge Plaintiff has regarding the internal staffing of Manatron is based upon confidential and proprietary information Plaintiff acquired during his employment." (*Id.* ¶ 100.) Plaintiff now argues that he didn't possess any information concerning Manatron's staffing in Minnesota. Once again, Plaintiff's factual argument is premature. Manatron has alleged he *did* know such information, and Plaintiff is forced to take Manatron's allegations as true."

Plaintiff actually argues that *Defendant* argues that he didn't possess any information concerning Manatron's staffing in Minnesota. Plaintiff's argument is not premature because the court has to take Manatron's *total* Counterclaim as true including where Manatron states Plaintiff did not have any knowledge of Minnesota projects.

Since Defendant knows Plaintiff did not have the required knowledge, the Counterclaim is filed for an improper reason.

Furthermore, the statement "staffing is messed up in some fashion" is clearly hyperbole. The phrase "messed up" cannot be interpreted by a reasonable reader to mean anything besides an opinion.

Plaintiff is entitled to have a negative opinion of Defendant's staffing levels based upon what he has read in the press. Making those opinions known without having specific insider knowledge of a project which Manatron agrees he did not have, is not a breach of contract and cannot be overcome by discovery.

### Manatron's Claim for Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*, States a Claim Upon Which Relief Can be Granted

Defendant states:

> To assert a violation of the UDTPA, a plaintiff need only show that the alleged actions "affect[] commerce,"

This is one of the strangest ascertations that Defendant puts forward. Defense council has been here before in front of this very court. *See ACS PARTNERS, LLC, v. AMERICON GROUP, INC., and MICHAEL CAPUTO;* (3:09CV464-RJC-DSC) where the Magistrate Judge states in his opinion on Defendant's Motion to Dismiss:

> "Defendant Caputo's conduct is not actionable as an unfair or deceptive trade practice. According to *Broussard*, a UDTPA claim cannot "piggyback" on a breach of contract action, even where the breach of contract was clearly intentional. *Broussard*, 155 F.3d at 347. North Carolina law does not permit a party to transmute a breach of contract claim into a tort or UDTPA claim for extraordinary damages because awarding punitive or treble damages would destroy the parties' bargain and force the defendant to bear a risk it never took on." Id. at 346 citing *Strum v. Exxon Co.*, 15 F.3d 327, 330 (4th Cir.1994); *See also PCS Phosphate Co., Inc. v. Norfolk Southern Corp.*,

And:

> "Additionally, Plaintiff's claims are 'far from the reach of the UDTPA because they are wholly divorced from the context of consumer transactions.' *PCS Phosphate Co.*, 559 F.3d at 225 (4 Cir. 2009). In *PCS Phosphate*, the Fourth Circuit noted that the UDTPA was intended to benefit consumers. Id. citing *Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704, 710 (2001). This dispute falls outside of the consumer transaction context because it is between an employer and an employee."

*ACS Partners* and the case at bar are strikingly similar because the instant case is also "wholly divorced from the context of consumer transactions" and it is in the employer and employer context. *See also PCS Phosphate Co., Inc. v. Norfolk Southern Corp.*, 559 F. 3d 212; *Dalton v. Camp*, 548 SE 2d 704;

Defendant states:

> "Plaintiff misunderstands the UDTPA's application. To assert a violation of the UDTPA, a plaintiff need only show that the alleged actions "affect[] commerce," (N.C. Gen. Stat. § 75-1.1(a)), not that the defendant is "involved" in commerce. (Pl. Mem. at 8.) Clearly, the allegations as set forth in Manatron's Counterclaims are sufficient to "affect[] commerce."10 *See Prince v. Wright*, 541 S.E.2d 191, 197 (N.C. Ct. App. 2000) ("'Commerce' in its broadest sense comprehends intercourse for the purpose of trade in any form," and "includes all business activities, however denominated.")"

The magic words in Defendant's statement above is "includes all business activities, however denominated." Plaintiff is not involved in any business activity. As an individual, Plaintiff is unable to violate the UDTPA unless he is in business.

*Prince v. Wright* does not support Defendant's contentions because all defendants were in business. However, it does bolster Plaintiff's Motion to Dismiss because it states:

> "Unfair and deceptive practices *tend to involve buyer and seller relationships. Holley v. Coggin Pontiac, Inc.*, 43 N.C.App. 229, 259 S.E.2d 1, *disc. review denied*, 298 N.C. 806, 261 S.E.2d 919 (1979). Nevertheless, courts have also recognized actions based on other types of *commercial relationships*, including those outside of contract." (Internal emphasis added).

Plaintiff is not in the business of buying or selling, and therefore cannot directly affect commerce. Plaintiff is not in any kind of business with Defendant or Defendant's clients (including commercial relationships) and therefore Plaintiff cannot violate the UDTPA by indirectly affecting commerce either.

Furthermore, even if Plaintiff could be shown to be a proper party to a UDTPA action for libel, Defendant does not plead that any Manatron customer relied on Plaintiff's alleged misrepresentations and therefore fails to provide the requisite causal connection. *See PLEASANT VAL. PROMENADE v. Lechmere, Inc.*, 464 SE 2d 47.

## Manatron's Claim for Injunctive Relief

Plaintiff does not deny that there is a parade of horribles and absurdities in the instant case but states that they are created in Defendant's Counterclaims. Plaintiff regrets feeling it necessary to attempt to protect his rights in such a manner. Absurd or not, Plaintiff takes Defendant's request for injunction to mean what it says.

Defendant states in their Opposition Motion, "In the Counterclaims, Manatron seeks only that this Court enter an injunction prohibiting Plaintiff from contacting its customers to disparage or harm its business or reputation".

It is untrue that Defendant asked for any limits for the injunction. While Plaintiff does not have the education or prestige of being an equity partner in a major law firm, he does believe that a court may act on their own motion based on the complaint and Defendant has already "move[d] the Court for injunctive relief" even without a distinct motion.

Plaintiff also acknowledges that Defendant's law firm has demonstrated their ability to draw up a prayer for an injunction, limited in scope, but chose not to do so in this case see *ACS Partners:*

> "ACS prays that this Court grant the following relief: a. Temporary and or permanent injunctive relief enjoining and restraining Defendant Caputo from *violating his contractual obligations* to ACS;" (Internal emphasis added.)

Regardless, Defendant as a matter of law cannot request an injunction that is not limited in scope. The fact that Defendant did so is ominous, draconian, and gives Plaintiff reason to fear Defendant's motives. These fears are not relieved by Defendant stating that they would leave it up to this court to "fashion" the injunction in a way that would protect Plaintiff. While Kudasz also trusts the court, Defendant's claim fails as a matter of law and should be dismissed.

### Plaintiff's Motion to Dismiss Pursuant to Rule 8(a)(2)

Defendant states that "Plaintiff's assertion that his actions in communicating with counsel for Manatron were made in a "desperate" attempt to meet and confer is patently absurd" and "Plaintiff voluntarily chose to make the statements contained in those communications. He cannot now attempt to hide behind a "meet and confer" requirement to keep those communications from the Court's consideration."

Plaintiff is not attempting to keep from the court any communications with Defendant council. Rather, Plaintiff wishes these paragraphs to be disregarded as items unnecessary to be answered because of the time and expense of doing so.

At one hour per paragraph it would take longer than three business days to answer this section of Defendant's complaint and Plaintiff believes them to be divorced from the claims and therefore superfluous. They appear to be included for an improper purpose and therefore Plaintiff should not have to answer them.

### The *Noerr-Pennington* Doctrine

Defendant's Motion supports the validity of Plaintiff's use of the *Noerr-Pennington* Doctrine when they quote *Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*, 756 F.2d 986, 993

"The policies behind the *Noerr-Pennington* doctrine include preserving an individual's first amendment right to petition government officials and encouraging the free flow of ideas to political bodies in order to ensure intelligent decisionmaking". Clearly Plaintiff's communications to Defendant's government clients is communicating ideas to a political body in

order to ensure intelligent decision-making. *Ottensmeyer* however is a complex business case involving law enforcement and therefore is not further compatible with the instant case.

    *Hill v. Borough of Kutztown* is strangely referred to by Defendant since it lists a losing party that is charged in similar ways that Plaintiff has charged both Defendants. This includes an EEOC complaint and defamation during discharge. However, *Hill* has no bearing on the instant case. Defendant Mayor in *Hill* was not attempting to influence government decision while Kudasz was. Manatron has admitted this based upon the fact that they state that the petitioning effort had an actual effect on government decision makers.

    *Municipal Revenue Service, Inc. v. Xspand, Inc* does not fit here because that court found a sham exception which does not correspond in this case as discussed below. *We, Inc. v. City of Philadelphia*, fails because it was dismissed for lack of appellate jurisdiction where the defendant was attempting to assert *Noerr-Pennington* to avoid suit and not to avoid liability. This case is not in front of an appellate court.

    *A Fisherman's Best, Inc. v. Recreational Fishing Alliance* is also oddly placed by the Defense. While it does mention the sham exception, *Fisherman's Best* does more to support the instant case than defeat it. The defendant in *Fisherman's Best* prevailed even though accused of "present[ing] false, half-true, and disparaging statements" which is similar to the behavior that Manatron accuses Kudasz. Plaintiff is also in the same boat as RFA defendant in *Fisherman's Best* because Plaintiff has "made no representation of fact that was not substantially true or reported by news agencies" (the majority of the claims outlined in Manatron's exhibits are those from news agencies). *Fisherman's Best* also touches on another Manatron argument where plaintiff AFB claimed RFA used threats and corruption to influence that case. That court ruled and the 4th Circuit agreed that the statements were "only a conversation about settlement

negotiations". Finally, the defamation claim by AFB against RFA was not enough to raise the sham exception, and in fact that court found that *Noerr-Pennington* did apply even with the charge of defamation, and the defendant was "entitled to immunity, pursuant to it, and that none of the exceptions to *Noerr* apply".

*Fisherman's Best* should be the bellwether for the instant case especially for this circuit.

### The "Sham" Exception to the *Noerr-Pennington* Doctrine

Plaintiff is confused as to why Defendant continues to rely on *Fisherman's Best* since it appears to him that the case was decided in a manner that would be favorable to Plaintiff. For example, Defendant quotes *Fisherman's Best* thusly:

> "The essential element of the sham exception is <u>intent to injure a competitor coupled with the absence of a genuine effort to influence the government</u>." *Id.* (emphasis added).

What is stated above and copied from Defendant's Motion is case law for the 4th Circuit. As the Court of Appeals further said in *Fisherman's Best* "Moreover, apart from our conclusion concerning RFA's subjective reasoning, the district court found that RFA was not a competitor of the plaintiffs". Plaintiff is not a competitor of Manatron in the instant case either.

*Fisherman's Best* goes much further in defeating Defendant's raising of the sham exception because "RFA could reasonably expect to succeed, and it did so. Its lobbying campaign was a success. It successfully educated local government officials concerning its views and helped to obtain a favorable governmental policy".

In order to be a sham, Plaintiff's actions must "interfere directly with the business relationships of a competitor," *Noerr*, supra, 365 U.S. at 144, 81 S.Ct. 523, through the "use [of] the governmental process — as opposed to the outcome of that process".

As Defendant quotes further in their Motion, "the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay" is an example of a sham.

But Defendant states that Kudasz was successful in his lobbying efforts because they allege damage to the relationships with their customers. Manatron quotes in their Counterclaim Exhibit 4:

> "My goal here is to help you with due diligence which can be hard to do if there is a rapid change in a technology field."; "The issues I am bringing to you have really snowballed in the past few months and current guidelines for diligence simply do not include this level of detective work.";

Clearly Plaintiff has brought forth a petition. And like *Fisherman's Best* the goal was to "educat[e] local government officials concerning its views".

Paragraph 40a of Defendant's Counterclaim states, "Plaintiff begins by attempting to persuade the Waukesha County officials to believe his false statements". While Kudasz denies the statements are false, what is relevant is that Defendant acknowledges Plaintiff's valid petitioning activity.

Paragraph 41 of Defendant's Counterclaim states that Kudasz, "has harmed the likelihood of future contracts with Waukesha County, has injured Manatron's reputation, and has subjected Manatron to ridicule in its business relationship". If it is true that the petition caused this outcome then the sham exception to *Noerr* cannot be claimed. This would show that the *outcome* of Plaintiff's petition was valid and he was not simply abusing the *process*. Kudasz has satisfied the "genuine effort to influence the government" as stated in *Fisherman's Best* because there was an effort to influence Manatron's customers.

A successful effort to influence governmental action "certainly cannot be characterized as a sham." *Professional Real Estate*, 508 U.S. at 58, 113 S.Ct. 1920 (citing *Allied Tube & Conduit*

*Corp. v. Indian Head, Inc.,* 486 U.S. 492, 502, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988)). *See also Eden Hannon & Co. v. Sumitomo Trust & Banking Co.,* 914 F.2d 556, 565 (4th Cir.1990) (holding that a litigant who successfully persuades "a neutral judge or jury that it is entitled to legal relief from the conduct of another based upon the law and facts" cannot be sued under the sham exception to *Noerr-Pennington*).

A two-step test for sham exceptions was announced in *Professional Real Estate.* The Supreme Court explained:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under the second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor," *Noerr, supra,* 365 U.S. at 144, 81 S.Ct. 523, through the "use [of] the governmental *process* — as opposed to the *outcome* of that process — as an anticompetitive weapon." *Omni,* 499 U.S. at 380, 111 S.Ct. 1344. This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability.

508 U.S. at 60-61, 113 S.Ct. 1920 (brackets in original).

Manatron's analysis does not satisfy the first step of the *Professional Real Estate* test and therefore this court does not need to address the sham exception any further..

June 15, 2010

For the reasons stated herein, Plaintiff's **Motion to Dismiss** should be granted

Respectfully Submitted,

*[signature: Gregory J. Kudasz]*

Gregory J. Kudasz, appearing pro se
3611 Mount Holly Huntersville RD
STE 204 Box 386
Charlotte, NC 28216-8706
Telephone: (980) 522-8210
Fax: (866) 473-4583
E-Mail: greg@title11.org

# CERTIFICATE OF SERVICE

I, Gregory J. Kudasz, hereby certify that I have this day filed the foregoing **PLAINTIFF'S REPLY TO MANATRON'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM** with the Clerk of Court at the Federal Courthouse in Charlotte N.C. which will cause a notification of the filing through the CM/ECF system to the following:

*Attorney for Defendants*

Bernard Tisdale III
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704.342.2588
Facsimile: 704.342.4379
Email: bernard.tisdale@ogletreedeakins.com

Dated this the 15th day of June, 2010.

*/s/ Gregory J. Kudasz*

Gregory J. Kudasz, plaintiff appearing pro se
3611 Mount Holly Huntersville RD
STE 204 Box 386
Charlotte, NC 28216-8706
Telephone: (980) 522-8210
Fax: (866) 473-4583
E-Mail: greg@title11.org